*Hartford,*
June, 1842.

Whiting
*v.*
The State.

---

LIVINGSTON *against* TYLER and another.

In an action against the lessee of a tract of timber land, in the *Hardenburgh* patent, lying between the *Northerly* bounds thereof and the top of the mountain, on a covenant to pay the lessor one dollar *per* cord for a quantity of bark not less than 800 cords, to be taken, by the lessee, from the leased premises, annually, during the term, the defendant, to prove that he had received a less quantity than the plaintiff claimed, offered in evidence a book kept by *H.,* who had since died. As a foundation for the admission of this evidence, it was shewn, that all the bark taken by the defendant, was carried to his tannery ; that *H.* was employed as clerk, by the defendant, with directions to receive the loads of bark, and make entries thereof, as they came, and that it was his duty and constant practice so to do ; that the book in question consisted of the original entries so made by *H. ;* and that the plaintiff had kept no account whatever, nor had any other mode of ascertaining the quantity of bark taken, been adopted. It was held, that under these circumstances, *H.* might be considered as the agent of both parties in keeping the account, though employed by the defendant only, and that the entries so made by him, were admissible for the purpose for which they were offered.

In such action, it was also held, that the defendant was not, of course, liable for all the bark (not exceeding 800 cords) which was upon the premises, or for all which might by possibility be taken therefrom ; but only for such quantity as he had been able to procure from the premises, by the use of the usual and customary means which are employed to take bark from such land, by those who carried on the business in the part of the country where it was situated.

*Hartford,*
*June, 1842.*

*Livingston*
*v.*
*Tyler.*

THIS was an action on the covenants of an indenture, dated and executed by the parties, the 1st of *March,* 1831.   By this instrument, the plaintiff leased to the defendants a tract of land in the *Hardenburgh* patent, in *Greene* county, in the state of *New-York,* "lying between the *Northerly* bounds thereof and the top of the mountain, *South* of the *Schoharie Kill,*" for the term of ten years, granting the defendants the right to cut and saw timber on the premises ; and the defendants, on their part, stipulated to allow and pay the plaintiff, as part of the rent, for a quantity of bark to be taken by them from the timber on the premises, not less than 800, nor more than 1000, cords a year, during the continuance of the term, the sum of one dollar for each cord so taken ; and that the defendants would take at least 800 cords of bark in each year·

The cause was tried at *Hartford, September* term, 1841, before *Storrs,* J.

The plaintiff claimed to have proved, that during each year since the execution of the indenture declared on, the defendants had taken from the leased premises more than 800 cords of bark.   This the defendants denied, and claimed to have proved the contrary.    They likewise claimed to have proved, that all the bark they had taken from the premises, during the term, had been carried and left at the defendants' tannery, near by the premises ; (and no evidence was offered to prove, nor claim made on the part of the plaintiff, that any part of it was carried or left elsewhere ;) and that it was their practice to keep, at their tannery, a book for the entry of each load of bark, with its contents ; and that a clerk of the defendants was directed to be present, as each load came, and to enter it, with the quantity, at the time, in the book.    The defendants then exhibited a book of that character, purporting to contain original entries of all the bark so delivered, in the years 1831, 2, 3, 4, 5 and 6. These entries were conceded to be in the hand-writing of one *Harrison,* who was now dead, and who had been the clerk of the defendants, at their tannery, during all that period. The defendants claimed, and introduced evidence to prove, that *Harrison* was their clerk to take the account of the loads of bark, as they came from the premises, and were left at the tannery ; and that he did, in fact, enter in said book, every load that came to the tannery.    There was no evidence offer-

ed, or claim made, by the plaintiff, that he had ever appointed any person to keep an account of the bark, or had ever requested that the account of the bark should be taken or kept in any other manner.    The plaintiff objected to the reception of the book, on the ground that the want of entries therein was no evidence, so far as the book went, to prove that more loads of bark had not been received ; and that the entries of a deceased clerk, made in the usual course of business, were admissible only to prove the charges actually made by him ; and that if the book was to be received at all, the court should instruct the jury, that it was no evidence to them, that no more loads of bark were received than appeared thereon.    The defendants claimed, that the book, under these circumstances, was admissible ; and that the jury should be instructed, that they might take it into consideration, as proving that no more loads of bark were received at the tannery, during the said years, than were entered in the book.    The court overruled the objection made by the plaintiff, and decided in accordance with the claim of the defendants ; and instructed the jury, that they might consider the book, and the entries therein, as evidence that no more loads of bark had been received than were so entered.

The plaintiff further claimed to have proved, that there were now standing on the premises, trees enough to yield the quantity of 3000 cords of bark ; and that for this quantity, the defendants were liable, whether they actually took it or not, if it did not make more than after the rate of 800 cords *per* year.    The defendants denied that there was so much bark on the premises ; and claimed to have proved, that it did not exceed 1000 cords, and that this, with the exception of about 50 cords, was upon or near the top of a high peak of the *Catskill* mountains, in the state of *New York*, about 1000 feet higher than the surrounding land ; that this peak was wholly inaccessible to teams of any kind ; that the bark thereon could not, by any reasonable or practicable means, be taken therefrom ; and that they had, with the exception of said 50 cords, peeled and taken all the bark from the premises, much higher up the peak than was, at the time, according to the general and well known usage of the country, under similar circumstances.    The defendants, therefore, requested

*Hartford,*
June, 1842.

Livingston
*v.*
Tyler.

the court to instruct the jury, that if they should find the facts as claimed by them, they were not, upon a just construction of the covenants in the indenture, under any obligation to take or pay for the bark so situated. ·The plaintiff claimed, that the bark in question might, by possibility, be taken from the peak ; and if so, that the defendants were, upon a just construction of said covenants, bound to take it, or, at least, to pay for it ; and that it was immaterial, whether it was, or was not, in conformity with the general and known usage of the country where the premises were, to take bark thus situated ; and the plaintiff requested the court so to instruct the jury.

The court, on this point, charged the jury, that by the just construction of said covenants, the defendants were not, as a matter of course, liable to the plaintiff for all the bark which was upon the premises, or for all which might, by possibility, be taken therefrom ; but that they were liable for whatever bark they had actually taken, and also for that which was accessible, and could have been taken by them from the premises, by the use of the usual and customary means, which are employed for the purpose of taking bark from such land, by those who carried on that business in the part of the country where it was situated.

The jury found a verdict in opposition to the claims of the plaintiff ; and he thereupon moved for a new trial.

*W. W. Ellsworth*, in support of the motion, contended, 1. That the book of the defendants, and the entries therein of *Harrison*, the clerk, were not admissible for the purpose for which they were received. The plaintiff took upon himself the burden of proving, and claimed that he had proved, that the defendants had received at least 800 cords of bark a year. The defendants denied this ; and offered their book and the entries therein, to prove that they had not received so much. By the decision of the court, the jury were to take these entries, not merely as evidence that the defendants received all the bark therein mentioned, but that they received no more.

In the first place, this evidence was wholly irrelevant. There was no controversy about the quantity of bark (say 600 cords) mentioned in the book. The only question was, whether the defendants received 200 cords more. These,

and these only, constituted the subject of litigation ; regarding which, the book was silent.

*Hartford,*
June, 1842.

Livingston
*v.*
Tyler.

But secondly, if the book was admissible at all, it should not have gone to the jury as unqualified proof. Suppose *Harrison* were living, and brought upon the stand, what must he say, to make his testimony of any value ? He must say, that he was present *all* the time ; that he saw *all* the bark that was delivered ; and that he entered it *all* in the book. If it fell short of this, it would be perfectly consistent with the fact, that more bark was delivered. It is quite enough to make the defendants' book evidence in their favour of what it contains. Even this is an exception to the general principle of the common law. It ought to be strictly guarded. 1 *Phill. Ev.* 194, 5. *Harrison* was not the agent of the plaintiff, or the common agent of both parties, but of the defendants exclusively. Nor can the fact that no other agent or mode was appointed by the parties, make any difference.

2. That the rule laid down by the court for ascertaining the quantity of bark for which the defendants are liable, is not correct. The plaintiff claimed, that the defendants could have cut higher up the mountain, where, it is admitted, there was bark. The defendants claimed, that they need cut no higher up than *other people usually did.* The lease is to "the top of the mountain;" and 800 cords are to be taken annually from the premises. The price is fixed at one dollar, in view of the *whole mountain.* The plaintiff had no right left to take a single cord from the premises, either at the bottom or the top of the mountain. Neither the usual practice of other people, nor the greater or less difficulty of getting the bark, furnishes the rule under this lease. For aught that appears to the contrary, every foot of this land was accessible. The case shews, that it was *not impossible* to take bark at the top of the mountain. The contract was, to go to the top ; and *that* must govern.

*Hungerford,* contra, contended, 1. That the book, under the circumstances of the case, was admissible for the purpose for which it was offered. The book was kept by the defendants, for the entry of each load and its contents ; it was *Harrison's* duty to make such entries ; he was directed to enter *all ;* he acted in this capacity, during the *whole* period in ques-

*Hartford,*
*June, 1842.*

*Livingston*
*v.*
*Tyler.*

tion ; the entries are in his hand-writing ; and he himself is dead. The defendants claimed, that all the bark which they received, was carried to their tannery ; and the plaintiff made no claim that any was carried elsewhere. *Furness* v. *Cope,* 5 *Bing.* 114. *Merrill* v. *Ithaca and Owego Rail-road Company,* 16 *Wend.* 586. *Union Bank* v. *Knapp,* 3 *Pick.* 96. *Price* v. Lord *Torrington,* 2 *Ld. Raym.* 873. 1 *Stark. Ev.* 72.

2. That the defendants were not bound to take the bark from the mountain higher than according to the general custom it had been taken. The court will give a reasonable construction to the covenant, and such an one as will carry into effect the object of the parties. The defendants wanted the bark for their tannery ; and, of course, they wanted such, and such only, as was fit for this use. But the construction claimed by the plaintiff, would extend the covenant to all the kinds of bark on the land, and to all the branches of the trees. The same reasonable construction which limits the covenant to the kind of bark generally used at a tannery, would also restrict the obligation of taking bark, so as not to include that which was inaccessible, and could not be taken from the premises, by the use of the usual and customary means. *Wilcox* v. *Wood,* 9 *Wend.* 436. 2 *Bla. Rep.* 1225. *Stultz* v. *Dickey,* 5 *Binn.* 285. *Dorsey* v. *Eagle,* 7 *Har. & Gill,* 321. *Smith* v. *Wilson,* 3 *B. & Adol.* 728. *Clayton* v. *Gregson,* 4 *Nev. & Mann.* 602. *Barger* v. *Caldwell,* 2 *Dana,* 130, 1.

CHURCH, J. 1. To lay the foundation for the admission in evidence of the original book kept by the defendants' deceased clerk, *Harrison,* it was claimed, or admitted, that all the bark taken under the contract in question, by the defendants, was carried to their tannery ; that *Harrison* was employed as clerk by the defendants, with directions, and whose duty it was, to receive the bark, and keep an account of its receipt ; that it had been his constant practice to make entries of the loads of bark, as they were received by him, at the defendants' tannery ; that the book offered in evidence consisted of *Harrison's* original entries made as aforesaid ; that the plaintiff kept no account whatever ; nor had he suggested any other course to ascertain the quantity of bark taken under the contract, than the one adopted by the defendants. It must be

presumed, that both parties intended that an account should be kept, by somebody : and as the plaintiff kept none, and suggested no other course, we must suppose he acquiesced in the one pursued by the defendants, especially, as this was a reasonable one, and business-like.

Under such a state of facts, it is not a forced construction of the matter, to say, that *Harrison* was the agent of both parties in keeping the account, although employed by one only ; as much so, at least, as the clerk of a bank, or a merchant's clerk, may be so considered, in keeping accounts of transactions in which his principals and their customers are equally interested. In this view, we perceive no reasonable objection to the admission of the book so kept, as evidence conducing to prove, not only that the quantity of bark entered was received, but also that the whole which was received at the tannery, was entered upon the book. The foundation of the principle is, that the book contained a true account ; and if so, it shewed the exact quantity received.

The principles upon which private, original entries, made by third persons, have been received as evidence affecting the rights of others, have not always been clearly stated, if clearly perceived.

They have been received, because they have been supposed to furnish some evidence against the person making them. *Webb* v. *Greenville,* 2 *Stra.* 1129. *Barry* v. *Bebbington,* 4 *Term Rep.* 515. 669. *Roe* d. *Brune* v. *Rawlings,* 7 *East,* 279. *Higham* v. *Ridgeway,* 10 *East,* 109. *Doe* d. *Reece* v. *Robson,* 15 *East,* 32. *Peaceable* d. *Uncle* v. *Watson,* 4 *Taun.* 16. *Goss* v. *Watlington,* 3 *Brod. & Bing.* 132. *Marks* & al. v. *Lahee,* 3 *Bing. N. Ca.* 408. *Pool* v. *Bridges,* 4 *Pick.* 378.

They have been received in proof of pedigree. *Rosc. Ev.* 20.

They have been received when made in the usual course of business, by a person now incapable of giving testimony, who had knowledge of the fact, and who had no motive to misrepresent it ; and more especially, when made with the presumed assent of the person to be charged with them. Within this principle, the question now considered, very distinctly falls. *Price* v. Lord *Torrington,* 1 *Salk.* 255. S. C. 2 *Ld. Ray.* 873. *Pitman* v. *Maddox,* 1 *Ld. Ray.* 732. *Bul. N. P.* 282. *Pritt* v. *Fairclough,* 3 *Campb.* 305. *Fagedon* v.

Hartford,
June, 1842.
———
Livingston
v.
Tyler.

*Reid, Id.* 379. 1 *Stark. Ev.* 319. *Champneys* v. *Peck*, 1 *Stark. Ca.* 404. *Furness* v. *Cope*, 5 *Bing.* 114. *Merrill* v. *Ithaca and Owego Rail-road Company*, 16 *Wend.* 586. *Lewis* v. *Norton*, 1 *Wash.* 76. *Welsh* v. *Barrett*, 15 *Mass. Rep.* 380. *Union Bank* v. *Knapp*, 8 *Pick.* 96. *Brewster* v. *Doane* & al., 2 *Hill*, 537.

2. The covenant, in this indenture, upon which this action is chiefly founded, is that one wherein the defendants agreed, that they would allow and pay to the plaintiff for not less than eight hundred cords of bark annually, to be taken by them from the leased premises. The plaintiff, at the trial, claimed, that the defendants were responsible for that quantity, at least; if it was physically possible for so much to be obtained from the land. The defendants claimed, that they had used all reasonable and practicable means to procure bark, and according to the well known usage and practice of those engaged in similar business, in that part of the country where the timber was growing; and that they had not procured, and, by such efforts, could not procure, eight hundred cords annually; and they insisted, that, under such circumstances, they were liable for no more than they had thus obtained; and so the court charged the jury.

This instruction was right. This covenant is to receive either a literal or practical construction. There is no middle course. If a literal construction is given to it, we must suppose the defendants were obliged to take the bark of the pine tree, as well as the hemlock—the hickory, as well as the oak. No distinction is made in the agreement; but because such bark as the pine and hickory is not used for tanning, or other practical purposes, we cannot suppose the parties had such in contemplation. And so, if this covenant is to be literally construed, the defendants should have taken the bark from every bough, great or small; but considering the covenant *secundum subjectam materiam*, and as practical men would consider it, we cannot consider this was necessary. The defendants were bound to pursue a reasonable and prudent course in fulfilment of their contract, having reference to the situation of the timber, the purposes and use for which the bark was intended, and the general usage of persons employed

in such business in that region. In conformity with this view, the jury were instructed ; and therefore, we do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted