CHICAGO LUMBERING CO. v. HEWITT et al.

(Circuit Court of Appeals, Sixth Circuit. October 22, 1894.)

No. 192.

EVIDENCE—BOOKS OF ACCOUNT.
 A book in which one person sets down the total amount of logs scaled from memoranda furnished him by another person, who did the work, is not admissible to prove the amount of logs scaled, unless supplemented by the testimony of the person furnishing original data.

In Error to the Circuit Court of the United States for the Western District of Michigan.

Action by Henry Hewitt and Elisha D. Smith against the Chicago Lumbering Company. Plaintiffs recovered judgment, and defendant brings error.

The plaintiff in error, the Chicago Lumbering Company, has a large sawmill near the mouth of the Manistique river, which empties into Lake Michigan from the Upper Peninsula of Michigan. About two miles above the mill of appellant is a mill called the "James," and owned by the defendants in error. There was a boom across the river above each mill. Logs to supply these mills were put into the Manistique from 2 to 70 miles above its mouth. The Indian river emptied into the Manistique between said mills. Plaintiffs in the court below owned lumber lands on the Manistique from 25 to 40 miles above defendant's mill, and on the Indian river from 15 to 20 miles above said mill. Both of said streams are very winding and crooked, and in some places have low banks and bayous, extending out into the woods from the stream. Plaintiffs were having their logs sawed at the James mill. Those on the Manistique were floated down that river until they reached the James. Those on the Indian river were floated down that river to the Manistique, and then towed up to the James. Plaintiffs, in the fall of 1880, made an oral bargain with defendant that it would saw and pile on its dock for shipment all the logs which should escape from the James boom into defendant's boom, and all logs which the James mill could not saw, and which plaintiffs should pass into defendant's boom. The evidence tended to show that all logs cut on the Manistique and its tributaries could go nowhere save into one of these booms, and that the logs escaping from the James boom must go into that of the defendant. There was evidence that logs were liable to escape from defendant's boom, and go out of the river into Lake Michigan; and that some of plaintiffs' logs did thus escape into Lake Michigan, and were not brought back by defendant. Evidence was given of the circumstances attending this loss of logs. Plaintiffs claimed that this evidence showed negligence in defendant.

Plaintiffs' evidence tended to show that while defendant was sawing their logs some portion of the lumber was carelessly mixed with defendant's lumber, and not delivered to plaintiffs. Defendant's evidence tended to show that there was very little of this, and that as much of defendant's lumber got mixed with and was delivered to plaintiffs as there was of plaintiffs' lumber which became mixed with that of defendant. There was no proof of the quantity of plaintiffs' logs which escaped into the lake, or of their lumber which got mixed with that of defendant. Plaintiffs' evidence tended to show that in the winters of 1879-80, 1880-81, 1881-82, 1882-83, they had cut and put into the Manistique and Indian rivers and their tributaries, according to the scale of logs made in the woods, 15,346,191 feet, board measure; that said logs were driven down these rivers, and must have gone to the James mill, or that of defendant; that said drives were what the lumbermen call "clean drives," and that not exceeding 1 per cent. were hung or sunk. Plaintiffs' evidence also tended to show that the amount of lumber cut at the James mill for them in the years named was 11,036,476 feet, and that the amount received from defendant was 2,119,000. Plaintiffs claimed that they were entitled to recover for an amount of lumber equal to the difference between the wood scale and the amount they received from the James mill and the defendant. This difference is stated in the declaration as 1,323,200 feet, but the amount the evidence is claimed to show is 2,190,715.

To maintain the issue presented by the plaintiffs below, and for the purpose of showing the quantity of logs put into the river above the boom of the Chicago Lumbering Company, they called one Patrick McFadden as a witness, who, being sworn, testified that he was foreman at a lumber camp of the plaintiffs on one of the tributaries of the Indian river in the winter of 1879 and 1880, looking after their lumbering operations at that point, and that a quantity of pine saw logs was put into the stream from that

point, and driven down the river as part of the entire quantity above mentioned. He testified further that the logs cut at said camp during that winter and put into the stream were scaled by one Foley; that witness' duty was to see that they were scaled in good order; that said Foley kept a tally of his scales upon tally boards hung on a piece of wire, putting down on these boards the length of each log and the number of feet it contained; that this tally on the board was kept in pencil, and rubbed off at night; that every evening the witness and said Foley would sit down and figure up from the tally board the quantity of logs so scaled during the day, and Foley and the witness set down in a book the date and the total number of feet scaled during the day according to said tally boards; and he examined Foley's scaling, sometimes twice and sometimes three or four times a day; that this book gives the tally of the logs scaled,—referring to scale book in court, which scale book was offered in evidence. Evidence was further given tending to show that said scaler, Foley, could not be found so as to obtain his testimony in regard to said scale. Said plaintiffs' counsel therefore offered in evidence the book so made by the witness McFadden from the tally boards so kept by scaler, Foley, during said winter, purporting to show the year and day of the month, and the total footing of each day's scale, and the number of logs scaled each day. Defendant's counsel objected thereto on the ground that the report of said scale was hearsay, and further, that said book did not purport to be a copy of the tally boards, but was simply the gross amount of the scale each day as put down by the witness, and that said book was incompetent as evidence to show the amount of timber so scaled during that winter. The court overruled said objection, and admitted said book as evidence, and to said ruling defendant's counsel excepted. Other testimony of like character as to logs scaled by other scalers was offered, and received over the objection of plaintiff in error. There was judgment for the plaintiffs below for $2,607.70.

C. A. Kent, for plaintiff in error.

F. O. Clark, for defendants in error.

Before TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The ruling under which the book kept by the witness McFadden was admitted as evidence seems to have been rested upon the ground that the evidence afforded by Mr. McFadden's entries was the best evidence of the facts sought to be proven which it was in the power of the plaintiffs to produce. It is true that the book is one which had been kept by the witness, and the entries offered had been all made by him. But it is equally true that the data upon which those entries had been made had been obtained from another, and that the witness had no such personal knowledge as to the correctness of these data as to enable him to say anything more than that he had correctly recorded the results obtained from data furnished by another. McFadden's book was not even a copy of the temporary memoranda made by Foley. Foley's data constituted a detailed statement as to the number, length, and lumber contents of each log placed in the river during the day; while the book entry showed only the aggregate lumber contents of the logs, ascertained by adding together the separate contents of each log as noted on the tally board. The mere fact that a temporary entry is made on a slate, or by chalk scores, or, as in this case, by pencil memoranda on tally boards, for the purpose of convenience and aiding the memory until a book entry could be made at the close of the day, would not operate to deprive such

subsequent entry of the character of an original entry, nor the book in which it was made of its character as an original book of accounts. Whitney v. Sawyer, 11 Gray, 242; Faxon v. Hollis, 13 Mass. 427; Smith v. Sanford, 12 Pick. 139. The original rough memoranda are not books of original entry, and need not be produced; and the fact that such memoranda had been made to aid the memory until a formal entry could be made will not make the book into which they were at once transcribed secondary evidence. Whart. Ev. § 682. The difficulty in this case lies in the fact that the book entries were made from the tally-board memoranda by a person other than the one who made the tally-board entries, and who knew nothing of the correctness of the data transcribed. That McFadden was able to testify that his additions were correct, and that he had correctly entered the sums thus ascertained, is not enough. The fact which it was important to the plaintiffs to prove was the lumber contents of the logs placed in the river above the defendant company's boom from the camp of which McFadden was foreman. What McFadden knew was that Foley, whose duty it was to scale the logs put in the river each day from that camp, had by his tally-board memoranda reported a given number of logs, containing, when aggregated, a given number of feet, as having been set afloat on a particular day. If McFadden had made his entries from oral statements made by persons having knowledge of the number and contents of logs floated each day, such entries would not have been competent without calling the persons who knew the facts, and on whose authority the entries had been made. Is there any distinction in the evidential value of entries made on the oral statement of clerks or servants who know the facts and memorandum made for convenience in aiding the memory of such clerks or servants? We can see none. Mr. McFadden's book could not refresh his memory as to the facts sought to be established by his entries, for the obvious reason that he had no personal knowledge of the truth of the facts recorded by him. That the book was not admissible to refresh McFadden's memory is therefore most obvious. Whether memoranda made by a witness of facts concerning which he had personal knowledge are admissible as independent evidence, or for any other purpose than to refresh the memory of the witness, is a question upon which there is great conflict of authority, and an open question in the courts of the United States. Bates v. Preble, 151 U. S. 157, 14 Sup. Ct. 277. Was this book receivable as independent evidence under the common-law rule concerning the admission of books of account? In the case last cited, Mr. Justice Brown said:

"There is no doubt that books of accounts, kept in the usual and regular course of business, when supplemented by the oath of the party who kept them, may be admitted in evidence," etc.

He adds:

"But whether this rule extends to memoranda made by a witness contemporaneously with the event they purport to record is open to very considerable doubt, courts and elementary writers being about equally divided on the subject. 1 Greenl. Ev. § 437, note 3; 1 Smith, Lead. Cas. (6th Am. Ed.) 508, 510. In New York they are held to be admissible. Halsey v. Sinse-

baugh, 15 N. Y. 485. The cases in Massachusetts apparently favor a different view. Com. v. Fox, 7 Gray, 585; Duggan v. Mahoney, 11 Allen, 572; Com. v. Ford, 130 Mass. 64; Com. v. Jeffs, 132 Mass. 5."

The book involved is not what the common-law rule denominates a "tradesman's book." In no true sense was it a book of accounts at all. At most it purports to contain memoranda made contemporaneously with the fact which they purport to record. That fact is the aggregate lumber contents of the logs placed in the river on each of a series of days from a lumber camp above the sawmills of the company for which they had been cut. If admissible as independent evidence at all, it must be, not because the book is technically an account book, but upon some rule making memoranda made by a witness admissible as independent evidence of the truth of the facts thus recorded.

The case of Chaffee v. U. S., 18 Wall. 516, is much in point, inasmuch as the certificate book there received as evidence was subject to the objection that it was not strictly a book of accounts, nor was it kept by one who personally knew the correctness of the facts recorded. There, as here, the memoranda were based on data furnished by others. The court in that case said that for the admissibility of such entries the rule required, "not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead or insane, or beyond the reach of the process or commission of the court." It added: "This knowledge of the party making the entry is essential to its admissibility." Id. 541. In Insurance Co. v. Weide, 9 Wall. 677, the suit was for the value of a stock of goods destroyed by fire. The stock inventories had been destroyed, as well as some of the books of accounts. A daybook and ledger were offered in evidence, and a memorandum on the fly leaf of the ledger, containing an abstract from the lost inventories. The books and this fly-leaf memorandum were admitted in evidence. Mr. Justice Nelson, in an opinion sustaining the ruling, saying:

"There can be no doubt but the daybooks and ledger, the entries upon which were testified to be correct by the persons who made them, were properly admitted. They would not have been evidence, per se, but, with the evidence accompanying them all, objection was removed."

The abstract on the fly leaf was also held admissible, proof of the loss of the original inventories being made, and the correctness of the facts shown by the memorandum having been testified to by the plaintiff who made the entry.

But it is argued that Foley could not be found, and that, therefore, the memoranda made upon his knowledge were admissible. This contention is sought to be supported by the rule stated by Mr. Justice Field, and heretofore quoted. The observation of Mr. Justice Story in Nicholls v. Webb, 8 Wheat. 331, is also thought to justify such an extension of the rule of evidence. That observation quite meets our approval. It was this:

"The rules of evidence are of great importance, and cannot be departed from, without endangering private as well as public rights. Courts of law

are, therefore, extremely cautious in the introduction of any new doctrines of evidence which trench upon old and established principles. Still, however, it is obvious that, as the rules of evidence are founded upon general interest and convenience, they must, from time to time, admit of modifications, to adapt them to the actual condition and business of men, or they would work manifest injustice."

When the principle so well stated by Judge Story is invoked to induce an extension of the rules of evidence relating to books of accounts, it should be borne in mind that, since the parties to a suit are no longer incompetent as witnesses, books of account are deprived of much of the peculiar significance which formerly attached to them. It was always competent for a litigant to call his clerk or other stranger, who had personal knowledge of the correctness of the book entry, to testify, using the book, if the witness had kept it, as a means of refreshing his memory. So in this case Foley was a competent witness to the correctness of the memoranda shown by the tally boards. Did the book kept by McFadden become competent independent evidence because Foley could not be found and produced as a witness? There is nothing, when rightly understood, in either Chaffee v. U. S., or Nicholls v. Webb, which will justify such a conclusion. In the case last cited the question was whether the book kept by a notary public, showing his action upon commercial paper placed in his hands to be protested, could be used as evidence of the facts there recorded by the notary after his death. The opinion was by Mr. Justice Story, and the rule concerning such books was thus stated:

"We think it a safe principle that memoranda made by a person in the ordinary course of his business, or acts or matters which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done. It is, of course, liable to be impugned by other evidence, and to be encountered by any presumptions or facts which diminish the credibility or certainty. A fortiori, we think the acts of a public officer, like a notary public, admissible, although they may not be strictly official, if they are according to the customary business of his office, since he acts as a sworn officer, and is clothed with public authority and confidence." 8 Wheat. 336.

Now, if Mr. McFadden had made these entries from his own personal knowledge, the book might have been competent evidence for the plaintiff, upon evidence of that fact and of the further fact that he was "dead or insane, or beyond the reach of the process or commission of the court." In this case, McFadden knew nothing of the correctness of the facts which he recorded. His death or absence could not make admissible evidence which was inadmissible if he were present. As the entries were not made by Foley at all, the book not being one kept by him, his declarations, either written or verbal, were incompetent as supplementing a book which he had not kept. To extend the admissibility of books founded on the declaration of absent or dead witnesses is not authorized by decided cases, and would not be justified by our idea of a wise policy. The failure of the appellees to produce Foley was doubtless due to their great laches in bringing this suit; several years having elapsed after their action accrued before this suit was begun. Their negligence should not operate to place their adversaries under all the disad-

vantages consequent upon being subjected to the effect of hearsay evidence. For the error in the admission of this book, the judgment must be reversed, and a new trial awarded.