SWAN v. THURMAN.

1. CHATTEL MORTGAGES — ACCOUNTS — RIGHT OF MORTGAGOR TO SUE.

A chattel mortgagor may maintain an action on an account covered by the mortgage if he is not in default, where the mortgage provides that until default he may keep and use the mortgaged property in the regular course of his business.[1]

2. EVIDENCE—BOOKS OF ACCOUNT—WHEN ADMISSIBLE.

A merchant's books of account are inadmissible in an action for goods sold and delivered, where the only testimony to support them is that of the bookkeeper, who merely transcribed the entries from slips handed him by salesmen, and who had no personal knowledge of the sale and delivery of the articles charged.

Error to Wayne; Donovan, J.   Submitted January 14, 1897.   Decided April 27, 1897.

*Assumpsit* by Thomas Swan against Charles Thurman for goods sold and delivered.   From a judgment for plaintiff, defendant brings error.   Reversed.

*William B. Jackson*, for appellant.

*Charles T. Alexander*, for appellee.

HOOKER, J.   The defendant appeals from a judgment against him in an action of *assumpsit*, alleging two errors:

1. That plaintiff's books of account were improperly admitted in evidence.

2. That the plaintiff had assigned his claim to another as security, and has no authority to sue for and collect it upon his own account and in his own name.

---

[1] The mortgage or assignment of future accounts is considered, with a review of the decisions, in a note to *Sandwich Manfg. Co.* v. *Robinson*, (Iowa) 14 L. R. A. 126.

The latter contention is based upon a chattel mortgage which covered the plaintiff's stock and included his accounts. In addition to the usual provisions of chattel mortgages, this mortgage contained the following, viz.:

" It is agreed that until default be made by the mortgagor in one or more of the conditions above recited, or proceedings are taken to foreclose this mortgage, the mortgagor may possess, sell, and use said mortgaged property in the regular course of retail business, but not for any other purpose."

We discover no evidence that the conditions of the mortgage have not been complied with, so far as said mortgage fixes the time for such compliance. It would seem, therefore, that the plaintiff has the right to continue his business, and collect his accounts for use in his business. This seems to have been the understanding of the mortgagees, one of whom was a witness. We cannot accede to the argument that this was an absolute assignment. That accounts may be the subject of mortgage is supported by innumerable authorities. *Davis* v. *Pitcher*, 97 Iowa, 13; *Sykes* v. *Hannawalt*, 5 N. Dak. 335; *Sandwich Manfg. Co.* v. *Robinson*, 83 Iowa, 567; *Lawrence* v. *McKenzie*, 88 Iowa, 440; *Preston Nat. Bank* v. *George T. Smith Middlings Purifier Co.*, 84 Mich. 364; *Kirkland* v. *Brune*, 31 Grat. 126; *Tingle* v. *Fisher*, 20 W. Va. 497; *Bacon* v. *Bonham*, 27 N. J. Eq. 209; *Williamson* v. *Railroad Co.*, 26 N. J. Eq. 398.

The evidence in support of the plaintiff's account consisted of the testimony of the bookkeeper, who stated that he kept the books of the plaintiff which contained the accounts. It appeared conclusively that the bookkeeper had no personal knowledge of the sale and delivery of any goods; all that he knew about their delivery being obtained from slips handed to him daily by the waiters, who took the orders and delivered the articles. It is sometimes proper to admit books of account as evidence of the acts of those who keep them, where the entries are contem-

poraneous with the acts recorded; but where the book is as in this case, the record of the acts of others, not within the personal knowledge of the bookkeeper, but made up from the statements of others, such book is hearsay. From the earliest cases, the admission of entries by third persons has proceeded upon the theory that such persons had personal knowledge of the fact stated in the entry. Such was the case in the leading case of *Price* v. *Earl of Torrington*, 1 Salk. 285, where, though the entry was made by one who did not deliver the goods, it was made in the presence of and was signed by the drayman who did, and it was treated as the entry of the drayman, and admitted after his death. In *Smith* v. *Blakey*, L. R. 2 Q. B. 326, Blackburn, J., says of the English authorities:

" The rule to be collected from all the cases is that it is an essential fact, to render such an entry admissible, that not only it should be made in the due discharge of the business about which the person is employed, but the duty must be to do the very thing to which the entry relates, and then to make a record of it."

In *Welsh* v. *Barrett*, 15 Mass. 380, Parker, C. J., said:

" But what a man has actually done, and committed to writing, when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury."

See, also, *Nicholls* v. *Webb*, 8 Wheat. 326; *Livingston* v. *Tyler*, 14 Conn. 493.

The general subject is exhaustively discussed in a note to *Price* v. *Earl of Torrington*, 1 Smith, Lead. Cas. 344, but we find nothing consistent with the proposition that entries made by a third person, living or dead, may be introduced to prove facts regarding which it is shown that he had no personal knowledge at the time the entries were made. It was necessary in this case to make further proof, before it could be said that these books made a *prima facie* case.

In *Jackson* v. *Evans*, 8 Mich. 476, the defendant was

charged with brick which were delivered by plaintiff's teamsters. One witness counted the brick when loaded, and kept account of them in a tally book or slate, until evening or the next day, when he reported the number to the plaintiff, but made no entries nor charges in plaintiff's books. It was held that these were not original entries. But the court held that, before the books could be introduced, it was necessary to call the teamsters, and, while they might not be able to remember how many brick they delivered to the defendant, they might remember that all loaded for him were delivered, which "would be a very important link in the chain of circumstances to prove a sale and delivery of the articles charged." The court said: "The teamsters can prove the delivery. Evans proves the number loaded and hauled away, and that he reported them to the defendant [in error], who entered them in his books. This makes up the *res gestæ.*"

We are of the opinion that the books were not admissible without further proof, and that the defendant was entitled to a directed verdict.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.