[Civ. No. 618. First Appellate District.—September 15, 1909.]

## SAN FRANCISCO TEAMING COMPANY, a Corporation, Respondent, v. HARRY N. GRAY and GEORGE F. GRAY, Individually and as Copartners, etc., Appellants.

EVIDENCE—BOOKS OF ACCOUNT—KNOWLEDGE OF FACTS BY PARTY MAKING ENTRIES ESSENTIAL.—In order to render admissible books of account it must appear that they are books of original entry, that the entries were made in the ordinary course of business, contemporaneously with the facts recorded, and by one who had knowledge of the facts.

ID.—ACCOUNT OF TEAMS AND TEAMSTERS—ENTRIES IN WORK-BOOK ON HEARSAY—MEMORANDUM OF ORAL STATEMENTS.—In an action by a teaming company to recover a balance for the use of teams and wagons furnished to defendants, it was prejudicially erroneous to admit in evidence a work-book in which it appeared that the entries were based solely on a memorandum of oral statements of teamsters made by a bookkeeper, who had no personal knowledge of the work or of the facts entered.

ID.—TEAMSTERS NOT CALLED AS WITNESSES.—The statements of such teamsters were not under oath, and they were not brought into court so that their statements could be tested by cross-examination.

ID.—BOOK AS HEARSAY.—Where a book is the record of the acts of others not within the personal knowledge of the bookkeeper, but made up from the statements of others, such book is hearsay.

ID.—PRINCIPLE OF EXCLUSION OF HEARSAY.—The exclusion of hearsay evidence is based on the principle that every litigant who comes into a court of justice has the clear right to have the witness against him brought into court face to face so that he may be tested by cross-examination as to every fact concerning which he has given evidence.

ID.—LEDGER INADMISSIBLE.—A ledger, not being a book of original entry, is inadmissible on that ground, as well as other grounds.

ID.—BOOKS NOT OF ORIGINAL ENTRY BASED ON HEARSAY OPEN TO FRAUDS.—If books not of original entry based on hearsay could be admitted, it would open the way to the grossest frauds. Books might be intentionally filled with overcharges based on hearsay.

ID.—OTHER EVIDENCE.—The fact that other evidence was given that teams and teamsters were furnished to the defendant cannot affect the question of admissibility of the book, which is the whole basis of the extent of the teams and teamsters furnished.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   Jas. M. Troutt, Judge.

The facts are stated in the opinion of the court.

Ames & Manning, for Appellants.

Arnold W. Liechti, for Respondent.

COOPER, P. J.—This action was brought to recover a balance claimed to be due for the use of teams and teamsters furnished by plaintiff to defendants at their request. Plaintiff recovered judgment, and this appeal is from the judgment and the order denying defendants' motion for a new trial.

There is only one question discussed in the briefs, and that is as to the ruling of the court in admitting, over the objection of defendants, a certain book called a work-book, containing the names of certain teamsters, the dates and number of loads hauled, the place from which and to where the loads were taken and the name of the persons for whom the hauling was done—the account in this case being a charge against defendants.

Plaintiff called as a witness one Milestone, who testified that he was in the employ of the plaintiff as bookkeeper during the time the teams were claimed to have been furnished, and that he kept the accounts and a full set of books—a work-book, ledger, cash-book, journal and check-book; that the work-book shown him contained entries of the work performed entered from a memorandum paper into the work-book, and that the work-book was correctly kept so far as he knew; that it was his custom to leave the barn between 4 and 5 o'clock of each day and go from the barn out to the camp at Fourteenth street and catch the different teamsters as they came in, and get an oral statement from each teamster as to what work had been done by him during the day; that he procured such oral statements from the teamsters and put them down on a memorandum paper, and took back such memoranda to his office and the same evening or the following morning he

would enter in the work-book "the name of the teamster, the number of loads from where and where to."

The witness clearly showed that the facts were obtained first by the oral statements of the various teamsters, then transferred by him to a memorandum or temporary paper and then afterward entered by him into the work-book, which was the book offered and received in evidence. The book was objected to upon the ground that it was irrelevant, immaterial and incompetent and hearsay, and that no proper foundation had been laid for its introduction. The court overruled the objection and allowed the book in evidence. After the book was so admitted the attorneys for defendant moved to strike out the testimony contained in the pages which were read as to the account against defendants, upon the ground that the book was hearsay and the court denied the motion. No teamster was called, nor was any attempt made to account for the absence of such teamsters as witnesses.

The first entry or memorandum made by the witness on paper was but the oral statement of the teamsters. Such teamsters were not under oath, and were not brought into court so that their statements could be tested by cross-examination.

It was long ago laid down by the courts of England that, on account of the necessity of the case and to prevent a failure of justice, the books of original entries, or the shop-books as they were called, in certain cases might be introduced in evidence. The entry must have been made in the ordinary course of business and by a person since deceased or beyond the jurisdiction of the court. It was necessary to prove that the merchant or tradesman whose books were offered, kept correct books of account, and that the entry was made in the usual course of business by one who had knowledge of the facts. These entries were admitted by the courts as exceptions to the general rule excluding hearsay evidence, in order to prevent a total failure of justice. It was said in the early case of *Lefebure* v. *Worden*, 2 Ves. 38: "So far the courts of justice have gone (and that was going a good way, and perhaps broke in upon the original strict rules of evidence) that where there was such evidence (entries) by a servant known in transacting the business, as in a goldsmith's shop by a cashier or bookkeeper, such entry, supported on the oath

of that servant that he used to make entries from time to
time and that he made them truly, has been read.   Further,
where that servant, agent or bookkeeper has been dead, if
there is proof that he was the servant or agent usually em-
ployed in such business, was intrusted to make such entries
by his master (and) that it was the course of trade—on proof
that he was dead and that it was his handwriting, such entry
has been read (which was Sir Biby Lake's case).   And that
was going a great way; for there it might be objected that
such entry was the same as if made by the master himself;
yet by reason of the difficulty of making proof in cases of this
kind the Court has gone so far.''

Applying the principles and rules laid down by the able
judges of the higher courts of England and of this country,
we do not think the evidence was admissible, but that it was
purely hearsay.

The fact, that it became necessary for plaintiff to prove,
was that he furnished certain teams and certain drivers to
defendants at their request, and the amount and nature of
such services, or a contract fixing the amount which was to
be paid.   Plaintiff does not appear to have kept any time-
keeper or person who knew of his own knowledge the num-
ber of teams and teamsters furnished, and the number of days
that they were employed by defendants.   The fact which
plaintiff did prove was certain oral statements by the various
teamsters.   The essential witnesses—the parties who did the
work and knew the facts—were not called; the witness who
was called did not testify to the truth of the facts, but to its
having been asserted on the extrajudicial occasions on which
the various oral statements were given.   The evidence of the
teamsters was conveyed by the witness, who told in court what
other parties had told him.   The exclusion of hearsay evidence
is based upon the principle that every litigant who comes into
a court of justice has a clear right to have the witness against
him brought into court face to face, so that he may be tested
by cross-examination as to every fact concerning which he has
given evidence.   It has been said that a person who relates
a hearsay is not obliged to enter into any particulars, to an-
swer any questions, to solve any difficulties, to reconcile any
contradictions, to explain any obscurities, to remove any am-
biguities.   He entrenches himself in his simple assertion that

he was told so and so, and leaves the burden upon his dead or absent author. In this case the witness testified only to having made an entry of what was told him by the teamsters. He does not even give a single name of any one of the persons whose statement he received, nor does he give a single segregated fact as being told him by any one person. He only in effect says: ''I was told by the various teamsters the various statements I entered in the work-book.''

We have examined the various cases cited by counsel for respondent, but we do not find any case which supports the rule as broadly as contended for here. On the contrary, in our opinion, the great weight of authority, both in England and in this country, supports the rule as we have given it. It is said by Greenleaf (vol. 1, 16th ed., sec. 120A): ''The entries must have been in the ordinary course of business . . . fairly contemporaneous with the events recorded . . . must be produced in its original form . . . and of a fact within the personal knowledge of the declarant.''

In Underhill on Evidence, section 60, it is said: ''Upon the question whether entries made in the books of a party to the suit are admissible as evidence in his own favor, under the proposition that such entries constitute a part of the *res gestae*, the cases are at considerable variance. If the entry was made by an employee of the party, having personal knowledge of the fact, in the usual course of his employment, in books which were kept for such entries, and if it was made at or near the date of the transaction and is illustrative of it, then there can be no objection to its admission upon the principles already laid down. It is really hearsay evidence, however, because the bookkeeper or other person making the entry was not on oath or cannot be produced, or, being produced, has wholly forgotten the circumstances attending the transaction.''

In a very exhaustive note to *Post* v. *Kenerson,* 72 Vt. 341, 52 L. R. A. 582-610, the question is discussed, and many authorities cited. On page 595 the rule is thus summed up by the author of the note: ''As a general rule, although there are cases holding otherwise, it is essential to the admissibility of entries made by a living witness that he should be able to state that at or about the time the entries were made he knew their contents, and knew them to be true, so that the entries and

the testimony of the witness concurrently shall be equivalent
to a present affirmation of the truth of their contents.''

In *Swan* v. *Thurman,* 112 Mich. 416, [70 N. W. 1023], it
appeared that the only testimony to support the books was
that of the bookkeeper, who merely transcribed the entries
from slips handed to him by salesmen and had no personal
knowledge of the sale and delivery of the articles charged.
The court said: ''It is sometimes proper to admit books of ac-
count as evidence of the acts of those who keep them where
the entries are contemporaneous with the acts recorded.  But
where the book is, as in this case, the record of the acts of
others not within the personal knowledge of the bookkeeper,
but made up from the statements of others, such book is hear-
say.  From the earliest cases the admission of entries by third
persons has proceeded upon the theory that such persons had
personal knowledge of the facts stated in the entry.''

In the late case of *Chicago Lumbering Co.* v. *Hewitt,* 64
Fed. 314, [12 C. C. A. 129], the circuit court of the United
States held that a book in which one person set down the total
amount of logs scaled from memoranda furnished him by an-
other person, who did the work, is not admissible to prove the
amount of logs scaled, unless supplemented by the testimony
of the person furnishing the original data.  The court said:
''That McFadden was able to testify that his additions were
correct and that he had correctly entered the amounts thus
ascertained, is not enough.  The fact which it was important
to the plaintiffs to prove was the lumber contents of the logs
placed in the river above the defendant company's boom from
the camp of which McFadden was foreman.  What McFad-
den knew was that Foley, whose duty it was to scale the logs
put in the river each day from that camp, had by his tally
board memoranda reported a given number of logs, contain-
ing, when aggregated, a given number of feet, as having been
set afloat on a particular day.  If McFadden had made his
entries from oral statements made by persons having knowl-
edge of the number and contents of logs floated each day, such
entries would not have been competent without calling the
persons who knew the facts and on whose authority the en-
tries had been made.  Is there any distinction in the eviden-
tial value of entries made on the oral statement of clerks or
servants who know the facts and memoranda made for con-

venience in aiding the memory of such clerks or servants?
We can see none.''

See further the following cases: *Dodge* v. *Morrow,* 14 Ind.
App. 534, [41 N. E. 967, 43 N. E. 153] ; *Bouldin* v. *Atl. Rice
Mills Co.* (Tex. Civ. App.), 86 S. W. 795; *Chisholm* v. *Bran-
nan Machine Co.,* 160 Ill. 101, [43 N. E. 796] ; *Chaffee* v.
*United States,* 95 U. S. 516, [21 L. ed. 912] ; *Gould* v. *Hart-
ley,* 187 Mass. 561, [73 N. E. 656] ; *Van Name* v. *Barber,* 115
App. Div. 593, [100 N. Y. Supp. 987].

The book, which was afterward offered by plaintiff, called
the ledger was inadmissible for the reasons above stated, and
further for the reason that it was not a book of original en-
tries. It does not in any way appear where the data were
obtained in the charges of ''April 2, Bill J. 4 $711.70'' and
of ''May 1, Bill J. 4, $747.40,'' except by the reference to
the journal.

The claim of respondent that, if the admission of said books
was error, such error was harmless, upon the ground as con-
tended that sufficient other evidence was offered to support
plaintiff's claim, cannot be upheld. It is true there was other
evidence that plaintiff furnished to defendant teams and
teamsters, and that they did certain work for defendants; but
the amount of such labor and the number of days the teams
were in the employ of defendants can only be ascertained from
the entries in the work-book. Not only is this true, but the
defendant offered and read in evidence without objection a
time-book kept by one Heisler, their timekeeper, who had
charge of the business of keeping accounts of the teams fur-
nished to defendants by plaintiff. This book was in direct
conflict with the work-book offered in evidence by plaintiff
as to many items, and made the amount of the plaintiff's
claim much less than the amount for which judgment was
given. We are aware that cases arise, and will continue to
arise, in which much difficulty is found in proving the many
items of original entries taken from clerks, agents or em-
ployees, particularly where there is a large number of such
clerks, agents or employees. But the rule we have adopted
appears to us to be the correct one on principle. If the rule
contended for by respondent in this case were followed it
would lay the foundation for gross frauds. Books might be
intentionally filled with overcharges based upon hearsay. The

defendant would have no opportunity to investigate the truth of the alleged hearsay evidence. It is better that the rule be certain and not extended so as to include hearsay evidence, than that it be overturned to avoid the hardships of some particular case.

It follows that the judgment and order must be reversed, and it is so ordered.

Hall, J., and Kerrigan, J., concurred.