[S. F. No. 9405. In Bank.—December 15, 1921.]

## A. J. SHIELDS, Respondent, v. RANCHO BUENA VENTURA (a Corporation), Appellant.

[1] CONTRACT—SERVICES FOR MANAGEMENT OF RANCH—COMPENSATION CONTINGENT ON PROFITS — RENDITION OF YEARLY ACCOUNTS — WAIVER.—Where a contract relating to the management of a ranch required the manager to keep proper books of account and to render an account annually, and provided for the payment of all expenses of operation before the payment of any compensation to the manager, and owing to the fact that the profits of the ranch were not in the form of cash, there was insufficient money to pay the manager at the end of the first and second years, and as a result payment of compensation was not asked, but the parties continued under the contract until the sale of the property, the right to a yearly settlement of accounts was waived by both parties, and the manager was entitled to full compensation upon proof of a profit each year equal to or in excess of the compensation.

[2] ACTION FOR SERVICES—EVIDENCE—BOOK ACCOUNTS.—In an action upon claims alleged to have arisen in connection with the management of a ranch for a corporation, the corporation's books were admissible as containing the first permanent entries of the transactions in question, where the correctness of the books were attested by the secretary who made the entries and by the manager who furnished the original data from which the entries were made.

[3] ID.—PROFITS OF RANCH—INCREASE IN STOCK AND PRODUCE—CONSTRUCTION OF CONTRACT.—Under a contract providing for the payment of all expenses of operation of a ranch before the payment of any compensation to the manager, the increased value of stock or produce on hand at the end of a given year over the value of stock or produce on hand at the end of the preceding year is to be treated as profits.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Short, Lindsay & Woolley for Appellant.

George Cosgrave and Frank Kauke for Respondent.

LENNON, J.—This is the second appeal prosecuted by the defendant corporation, Rancho Buena Ventura, from a judgment in favor of the plaintiff, A. J. Shields, in an action upon claims alleged to have arisen in connection with the management of a ranch in Shasta County, California.

The ranch was the property of the defendant corporation. Practically the entire capital stock of this corporation was owned by three persons—Frank Short, George Hoxie, and the plaintiff Shields. E. A. Mower was the secretary of the corporation and handled all its accounts. For several years prior to 1910 plaintiff had been in charge of the ranch, developing it and working under a salary. In 1910 plaintiff and defendant corporation entered into a contract under which plaintiff operated and managed the ranch from January 1, 1910, until the month of October, 1912, when the land was sold. The provisions of the contract which are of importance for present purposes may be summarized as

---

2. Admissibility of party's books of account as evidence in his favor, note, 52 L. R. A. 545.

follows: Plaintiff was to have complete charge of the ranch and was to manage and conduct the same. It was agreed that: ''The party of the second part [plaintiff herein] is to keep full and correct books of account showing all receipts and expenditures by him received, incurred or made in connection with said ranch, all business and the products thereof, and all of the same, and on the first day of January of each year the party of the second part will render a complete, full and correct statement of his accounts and transactions, receipts and expenditures.'' The proceeds of the ranch were to be applied in the following manner: After the payment of all expenses incurred in the management of the ranch, including the household and living expenses of himself and family, plaintiff was entitled to one thousand five hundred dollars each year in full payment for his services; all of the residue was the property of the defendant corporation. There was a provision· that the contract should cease to operate upon certain contingencies, one of which was a sale of the premises, and, therefore, the agreement was terminated by the sale of the ranch in October, 1912.

In this action plaintiff seeks to recover compensation for his services, at the rate of one thousand five hundred dollars per year, or $125 per month, for the period during which he managed the ranch under the above-mentioned contract, namely, from January, 1910, until October, 1912; he also asks repayment of a certain sum claimed to have been advanced by him in connection with the management of the ranch and not repaid by defendant. The first trial resulted in a verdict and judgment in plaintiff's favor for the sum of $7,060.94, but the judgment was reversed by the district court of appeal (*Shields* v. *Rancho Buena Ventura*, 38 Cal. App. 696, [177 Pac. 499]); upon the second trial plaintiff voluntarily reduced his claim to $5,742.52 and recovered a verdict and judgment for that amount. This latter sum is arrived at by computing plaintiff's salary at $125 a month for thirty-four months, making a total of $4,250, and allowing $1,492.52 for money advanced for the use of defendant.

The decision of the district court of appeal in *Shields* v. *Rancho Buena Ventura*, 38 Cal. App. 696, [177 Pac. 499], reversing the first judgment in plaintiff's favor, must, as to all points of law therein passed.upon, be taken as the law of the case upon retrial. Relying upon this fact, defendant

contends that the holding in that case was that plaintiff could not recover without a showing that he had rendered annual accounts to the defendant as required by his contract, and, inasmuch as it is conceded that plaintiff did not report to defendant concerning the state of his accounts at the end of each year during the time that he was managing the ranch, defendant deduces the conclusion that plaintiff has failed to make out a case under the law as established upon the previous appeal. This contention cannot be sustained for the reason that it is based upon an incorrect interpretation of the decision of the district court of appeal. In that decision it was held that "the operation of the ranch by the plaintiff was as to each year a separate and distinct transaction and not a continuous transaction for the entire period," and that, consequently, before plaintiff could recover for any year the compensation of one thousand five hundred dollars provided for by the contract, it must be made to appear that the net proceeds of the ranch for that year equaled that sum. At the first trial plaintiff made no attempt whatever to show the amount of the proceeds of the same for any one year, but merely introduced in evidence a single account covering the entire period from January, 1910, to November, 1912, and, accordingly, the judgment was reversed for the reason that "The jury, in the condition of the evidence upon which the cause was submitted, had no means of knowing whether for the years 1910 and 1911 there was anything due from the defendant to the plaintiff under the terms of the contract." Since the total lack of evidence concerning the annual profits of the ranch was the ground of the reversal of the first judgment in plaintiff's favor, it is apparent that the question of the effect of plaintiff's failure to render an annual report to the defendant was not within the issues decided upon the former appeal. Upon that appeal it was said: "There can be no doubt that the plaintiff was required by his contract to render an account annually; and it is apparent that without this annual account there was no basis upon which a settlement could be arrived at between the parties." Defendant interprets this to mean that plaintiff could not recover without proving an annual submission of accounts to the defendant, but that is not the purport of the quoted sentence. The keeping accounts in annual periods and the submission of these accounts to the defendant at the end of

each year are distinct obligations, and the sentence in ques-
tion may be paraphrased thus: The keeping of accounts in
annual periods was indispensable to the performance of the
contract by its very terms; the contract also called for the
presentation of these accounts annually. But the annual
presentation of the accounts was not of the essence of the
contract. Plaintiff was not entitled to compensation until he
proved that the amount of compensation claimed by him
had been earned by the ranch during the year in which the
services were rendered and, therefore, if plaintiff demanded
that his compensation be paid precisely at the end of each
year, it was incumbent upon him to report upon his accounts
at that time. [1] It appears, however, that, owing to the
fact that the profits of the ranch were not in the form of
cash, there was insufficient money with which to pay plaintiff
at the end of the years 1910 and 1911. As a result, plaintiff
did not ask payment at the end of these years, but plaintiff
and defendant continued under the contract, payment of
the salary being deferred, until the sale in 1912. Under
these circumstances it must be held that both parties waived
the right to a yearly settlement of accounts. Therefore, if
plaintiff can prove that there was each year a profit equal
to or in excess of the sum of one thousand five hundred dol-
lars, he is entitled to full compensation, irrespective of the
fact that his accounts were not presented and settled an-
nually.

[2] Proceeding in accordance with the ruling of the dis-
trict court of appeal, plaintiff introduced evidence at the
second trial showing, or tending to show, that he had kept a
complete record of all transactions at the ranch by entries in
memorandum-books, and that from these memoranda the
secretary of the corporation subsequently posted up the cor-
poration's books. The plaintiff's memorandum-books were
not offered in evidence, for the reason that they were left
upon the ranch when it was sold in 1912 and were subse-
quently burned, but the books kept by the secretary of the
corporation were produced in court. The secretary testified
regarding the manner in which he kept the books, that the
entries therein were taken entirely from plaintiff's memo-
randa, and that these memoranda were correctly copied
by him. Plaintiff himself testified concerning the complete-
ness and accuracy of his own memoranda of the transactions

on the ranch. The books having thus been authenticated and their correctness attested by the party who made the entries and by the person furnishing the original data from which the entries were made, they were admissible as containing the first permanent entries of the transactions in question. (*Chan Kiu Sing* v. *Gordon*, 171 Cal. 28, [151 Pac. 657]; *San Francisco Teamsters' Co.* v. *Gray*, 11 Cal. App. 314, 319, [104 Pac. 999]; *Mercantile Trust Co.* v. *Doe*, 26 Cal. App. 246, 256, [146 Pac. 692]; *Chicago Lumbering Co.* v. *Hewitt*, 64 Fed. 314, [12 C. C. A. 129].) The books of account being properly admitted, it was not error to permit the plaintiff to read in evidence summaries of the accounts therein, for the purpose of avoiding delay. (Code Civ. Proc., sec. 1855, subd. 5.) Nor was error committed in admitting, in addition to these accounts, the testimony of the plaintiff concerning the transactions on the ranch during each of the years mentioned. If plaintiff was able to corroborate the accounts by testifying to facts from his own personal knowledge, certainly the admission of this testimony furnishes the defendant no ground of complaint.

[3] It appears from the accounts, and testimony, that there was not enough cash on hand to pay plaintiff's salary at the end of the years 1910 and 1911, but plaintiff contends that the gain is to be found in the value of the increase in stock and products, together with an increase in the permanent improvements on the ranch. Upon this phase of the case it was stated in the opinion of the district court of appeal upon the former appeal: "A proper construction of this contract, having in mind the conditions under which it was entered into and its objects and purposes, would treat as proceeds not only money received from actual sales of produce, but the increased value of stock or produce on hand at the end of a given year over the value of stock or produce on hand at the end of the preceding year; for it was the duty of the plaintiff, under his contract, to manage the business prudently and for the best interests of his employer, and it would not be to that interest that he should, in anticipation of the closing of the annual period, make hasty and ill-advised sales of produce merely for the purpose of having money on hand applicable to the payment of expenses and his own compensation." This interpretation of the contract is not attacked by defendant, and, placing this construction

upon the contract, the accounts and inventories put in evidence at the second trial, supplemented by Mr. Mower's and the plaintiff's testimony, reveal a net gain each year considerably in excess of one thousand five hundred dollars. The evidence is too voluminous to warrant setting it forth in this opinion. Suffice it to say that the evidence was sufficiently substantial to support the finding of the jury, which must be implied from the verdict, that the amount of the net proceeds resulting from the operation of the ranch each of the years in question entitled plaintiff to full compensation for his services under his contract.

The next question for consideration is plaintiff's right to reimbursement in the sum of $1,492.52 for money alleged to have been invested by him in the ranch. The only question raised by defendant in connection with this phase of the case is whether or not there is sufficient evidence that that sum was actually advanced by plaintiff in the management of the ranch.

This must be ascertained from the summaries of cash receipts and disbursements. It may be stated, by way of preliminary explanation, that these accounts contained entries of the receipt and disbursement of some six thousand two hundred dollars, which was borrowed for use in the management of the ranch and repaid by plaintiff from the income from the ranch. An additional three thousand dollars, borrowed by plaintiff, was entered among the receipts of the ranch. At the termination of the agreement plaintiff had on hand a sum sufficient to repay this obligation. The transactions concerning this nine thousand two hundred dollars, and the payment of interest thereon, may, it is conceded, be eliminated from the accounts in determining the amount of cash received and disbursed in managing the ranch. Moreover, plaintiff's salary, although not actually paid, was entered among the disbursements as a matter of bookkeeping, because sufficient profits had in fact been earned to entitle plaintiff to the amount thereof. Eliminating the money borrowed from receipts and eliminating the money repaid, together with interest thereon, and the salary items from the disbursements, the accounts show that the excess of cash disbursements over receipts was approximately three thousand eight hundred dollars in the year 1910 and $790 in 1911, while receipts were about $3,082 greater than disbursements for the ten months of 1912, making a total of some one

thousand five hundred dollars excess of disbursements over receipts during the period of plaintiff's management. This fact, when considered in connection with the testimony of plaintiff that he received no money from the corporation for the management of the ranch, is sufficient evidence in support of plaintiff's claim to reimbursement to the extent that the expenditures exceeded receipts.

Defendant attacks this conclusion upon two grounds. It is first claimed that in this computation plaintiff has failed to credit defendant with one thousand dollars in cash which the cash account shows he had on hand at the time he started operations under the contract, and which, it is claimed, was the property of the defendant corporation. Mr. Mower, the secretary of the corporation, testified that this entry in the cash account of one thousand dollars "cash on hand" as of January 1, 1910, represented cash belonging to the plaintiff personally and not cash obtained from the defendant. The suggestion that this was hearsay testimony is of little weight in view of the fact that Mr. Mower was bookkeeper for the company, kept the books of the ranch both before and during plaintiff's management, and, therefore, was presumably thoroughly familiar with the financial affairs of the company. Moreover, plaintiff himself testified that the defendant never advanced any money for use on the ranch and the money in question is not listed in the inventory of the property of the corporation entrusted to plaintiff under the contract on January 1, 1910. Clearly, therefore, there is evidence to support the inference that this one thousand dollars appearing in the cash account was the property of the plaintiff and no more belonged to the defendant than the money borrowed by the plaintiff and repaid by him, which likewise found its way into the cash account.

The next contention of defendant is that, even conceding that this one thousand dollars expended in the management of the ranch was the money of the plaintiff, the latter's own testimony proves that there is no possible source from which he could have obtained the remaining $492.52 claimed to have been advanced by plaintiff to the corporation and allowed him by the jury. Plaintiff testified, in effect, that on January 1, 1910, he had two thousand dollars in his own personal funds and that later he received a dividend of two thousand dollars. Aside from the one thousand dollars expended by him in the management of the ranch, this four

thousand dollars represents the total amount of plaintiff's personal funds while he was in control of the ranch. It is defendant's theory that the disposition of this money is entirely accounted for by plaintiff's testimony to the effect that he had spent some four thousand dollars in the support of his wife and children during the period between January 1, 1910, and October, 1912, and that it is, therefore, apparent that plaintiff did not have $492.52 of his own money to expend for the corporation. The fallacy of this argument lies in defendant's interpretation of plaintiff's testimony concerning the amount of money spent by him in the support of his family. It is true that there is some confusion in plaintiff's testimony and that it is possible to interpret his testimony as estimating his expenses to have been as high as four thousand dollars. Nevertheless, the testimony will also support a lower estimate and, upon this appeal, it must be viewed in the light most favorable to plaintiff. In approximating plaintiff's personal expenses it must be remembered that the household and living expenses of plaintiff were, under the terms of the contract, paid from the income from the ranch and rated as part of the expense of managing the ranch, and that there was testimony that plaintiff's wife had money of her own and "always attended to her own buying."

Turning, then, to the testimony relied upon by defendant, it may be summarized, in the aspect most favorable to plaintiff, as follows: Plaintiff expended "around a hundred dollars a month" upon his three children during the time they were in school. Allowing for a three months' vacation, this would amount to nine hundred dollars a year. From January, 1910, until October, 1912, this would mean an expenditure of approximately two thousand five hundred dollars. Plaintiff estimated his own personal expenses, and those of his wife paid by him, at less than five hundred dollars, making a total of three thousand dollars. Even allowing a margin of five hundred dollars, this calculation shows that plaintiff would still have had sufficient cash to advance to the corporation the $492.52 for which the jury allowed him reimbursement.

The judgment is affirmed.

Sloane, J., Wilbur, J., Shaw, C. J., and Shurtleff, J., concurred.