ALBION R. P. BRADBURY *vs.* EMERSON R. BARDIN.

In an action for fraud in the sale of defendant's business as a physician, the declaration alleged that the defendant falsely represented that his practice was the regular, legitimate, allopathic practice, and was worth $6,000 dollars a year. Held, 1. That the testimony of a regular practitioner of the allopathic school and a member of the county medical society, that the regular physicians of the town refused to associate with the defendant, because his practice was irregular and eclectic, was admissible to prove that the defendant was not associated with the witness as one of the regular physicians of the town, and that his practice was irregular and illegitimate. 2. That evidence of specific acts of irregular and illegitimate practice by the defendant, as an abortionist, was admissible. 3. That an advertisement published by the defendant in a paper in the city of New York was admissible to prove his representations as to the character and value of his practice. 4. That evidence that the defendant's return of income to the assessor of internal revenue showed an income of less than $6,000 was admissible. 5. That declarations of the defendant made to a third person, and unconnected with any professional act, adverse to the eclectic practice, and favorable to the allopathic practice, were not admissible in his favor.

Where evidence is in part admissible and in part inadmissible, an objection taken to the whole, without designating the part that is inadmissible, is not well taken.

ACTION on the case, tried to the jury in the Superior Court, before *Granger, J.,* on the general issue, and verdict for the plaintiff. The defendant moved for a new trial. The case is sufficiently stated in the opinion.

VOL. XXXV.—73

*Brewster*, with whom was *Averill*, in support of the motion.

1. Dr. Bennett's evidence was inadmissible. "A witness cannot be permitted to give the opinion of others, the motives of their actions, or the treatment, or the reasons for the treatment, of the parties by third persons." 1 Taylor Ev. (ed. 1868), 519, 524 ; 2 Phill. Ev., 760 ; *Wright* v. *Latham*, 7 Adol. & El., 313 ; *Robbins* v. *Treadway*, 2 J. J. Marsh., 540 ; *Whetstone* v. *Bank of Montgomery*, 9 Ala., 875 ; *Peak* v. *Stout*, 8 id., 647 ; *Planters' and Merchants' Bank* v. *Borland*, 5 id., 531 ; Starkie Ev., 60, 61.

2. Dr. Lacey's evidence was inadmissible. Opinions of what constitutes fraud in medical practice being simply views of moral obligation should not have been received by the court. *Wright* v. *Latham*, *supra* ; *Ramadge* v. *Ryan*, 9 Bing., 333 ; *Campbell* v. *Rickards*, 5 Barn. & Ad., 840 ; *Livingston* v. *Cox*, 8 Watts & Serg., 61.

3. The advertisement was inadmissible for the purpose for which it was admitted. There is no allegation in the declaration of representations of " the practice of the last year." *Golding* v. *Skinner*, 1 Pick., 162 ; *Merrill* v. *Gold*, 1 Cush., 457 ; *Harris* v. *Mantle*, 3 T. R., 307.

4. The tax list was inadmissible. *Bodurtha* v. *Phelon*, 2 Allen, 347 ; *Stroud* v. *Pierce*, 6 id., 413.

5. The evidence of Dr. Brown was admissible. The declarations were made before any controversy arose, and were against defendant's interest at the time. They not only formed a material part of the *res gestae*, but served to interpret the nature of the defendant's practice by showing its theory. As part of the *res gestae*—1 Taylor Ev., 532 ; *Russell* v. *Frisbie*, 19 Conn., 205 ; *North Stonington* v. *Stonington*, 31 id., 412 ; *Sessions* v. *Little*, 9 N. Hamp., 271 ; *Perkins* v. *Concord R. R. Co.*, 44 id., 223 ; *Phillips* v. *Kelley*, 29 Ala., 628 ; *Proctor* v. *Town of Lewiston*, 25 Ill., 153 ; *Baker* v. *Griffin*, 10 Bosw., 140 ; *Duffey* v. *Presbyterian Congregation of Bellefonte*, 48 Penn. S. R., 46 ; *Wooden* v. *Cowles*, 11 Conn., 292. As showing defendant's theory of practice— 1 Taylor Ev., 530 ; *Thorndike* v. *City of Boston*, 1 Met., 242 ; *West* v. *Price's heirs*, 2 J. J. Marsh., 380 ; *Jackson* v. *Vreden-*

*bergh,* 1 Johns., 158; *Williams* v. *Ensign,* 4 Conn., 456. As against defendant's interest—*Simonds* v. *Clapp,* 16 N. Hamp., 222. To explain Crosby's mistake as to the successorship—*Rex* v. *Smyth,* 5 Car. & P., 201; *Rex* v. *Crutchley,* id., 133, and note *a.* To rebut evidence of *mala fides*—*Shrewsbury* v. *Blount,* 2 Man. & Grang., 475.

6. Evidence of specific illegal acts was inadmissible. *Bradbury* v. *Bardin,* 34 Conn., 452; Gould Pl., ch. 4, § 29; *Hewison* v. *City of New Haven,* 34 Conn., 136; *Bailey* v. *Bussing,* 29 id., 1; *Rapelye* v. *Bailey,* 3 id., 438; *Town of Barkhamstead v. Case,* 5 id., 528; *Snell* v. *Moses,* 1 Johns., 96; *Gouverneur* v. *Elmendorf,* 5 Johns. Ch., 79; *James* v. *McKernon,* 6 Johns., 543; 2 Hilliard on Torts, 285; *J'Anson* v. *Stuart,* 1 T. R., 748; 2 Smith Lead. Cas., 35; 1 id., 273.

*White* and *Taylor,* contra.

BUTLER, J. We have attentively considered the numerous points made and authorities cited by the counsel for the defendant, and find no error which will justify a disturbance of the verdict.

It may be well before considering the points made, to extract from the motion the material facts involved, and see what the material issues were between the parties.

The defendant in 1865 was a practicing physician in Danbury, in this state. In March of that year he inserted in the " New York Herald" the following advertisement:

" Physician wanted to fill one of the best openings in a country town of 8000 inhabitants, near New York. Railroad communication. The present physician did a practice of over $6,000 a year the last year. He would sell his practice, with one good horse, carriage and harness, on easy terms ; good house, barn and garden. Rent cheap. For further particulars enquire of M. Cummings, 257 Broadway, N. York, in Broadway Bank, or at his office 29 Amity street, after banking hours."

Induced by the advertisement the plaintiff visited Danbury and saw the defendant. To induce the plaintiff to purchase

the business the defendant further represented orally that he was a regular practitioner and practiced according to the allopathic school; that his business was a regular business and such as a regular physician could engage in, and that his business was worth $6,000 a year. The plaintiff thereupon purchased of the defendant for the sum of $800 his position and the good will of his business. In May following the plaintiff, claiming to have been defrauded by the representations and contract, brought the present action, alleging that he was induced to make the purchase by the representations of the defendant that his practice was worth between $6,000 and $7,000 a year, and that his practice was the regular allopathic practice, and was and had been a legitimate practice, and further alleging that the representations were untrue.

The main issue between the parties then was, whether in point of fact the defendant was and had been doing a regular legitimate allopathic practice worth $6,000 a year.

1. To prove that the business was not a regular business, the plaintiff offered the testimony of Ezra P. Bennett, M. D., a regular practitioner of the old school, popularly called allopathic, that the regular physicians of Danbury refused to associate with the defendant, because his practice was irregular and eclectic. To this the defendant objected generally and the court admitted the evidence.

It is undoubtedly true, as a general rule, that a witness cannot be permitted to give the opinions of others, the motives of their actions, or the treatment or the reasons for the treatment of the parties by third persons; but we are not sure that the case in hand is not an exception to the rule. The regular allopathic physicians of the state are incorporated by law, having a general organization and special county organizations, authorized to make rules to govern their own practice and regulate their intercourse and association with irregular physicians and each other. Particular organized associations of the regular physicians of a place are quite common also, though not corporate. The principal question between the parties was whether or not the defendant made $6,000 a year by a regular, legitimate, allopathic practice, the plaintiff being

desirous of purchasing the opportunity of doing the same thing. Any evidence therefore which tended to show that the plaintiff's receipts from his business were not $6,000 a year, or that, if they were, they were not derived from a regular allopathic and lawful business, such as the plaintiff could conscientiously and honestly continue, was admissible. If the plaintiff was associated with the regular allopathic physicians, in the county medical society, or in a town association of those physicians, and was associated with and consulted by them as such, the fact would certainly tend to show that his practice was regular, allopathic and legitimate ; and so, on the other hand, if he was not a member of any such organization and was not associated and consulted with by their members, because his practice was irregular, that fact certainly tended to prove the issue between the parties. That Dr. Bennett was a member of the county society, and the town association, if there was one, (and the motion does not show that there was not,) sufficiently appears from the statement that he was a *regular physician*, such being the popular import of the terms. Although therefore Dr. Bennett could not speak of the motives and conduct of others, as a rule, we are not sure that he might not speak of the motives and conduct of such an association of which he was a member, founded on facts of which he had knowledge.

But however that may be, it was competent for Dr. Bennett to speak of his own knowledge in relation to the fact whether the defendant was or was not associated with him as one of the regular physicians of the place, and whether the practice of the defendant was or was not regular and legitimate ; and to that extent certainly the testimony was admissible. The defendant's counsel did not discriminate between the import of the testimony as resting on the personal knowledge and personal conduct of Dr. Bennett as one of the regular physicians, and the import of it as giving the motives and conduct of others, and the court was not bound to do so. The objection being to all the testimony and the evidence admissible to some extent, the court very properly overruled the objection. *Ashmead* v. *Colby*, 26 Conn., 309.

2. The plaintiff further offered the testimony of William F. Lacey, M. D., and enquired of him the meaning of the terms " allopathic practice," and " eclectic practice," which the witness in his answer defined, .and further said, without being interrogated, that it would be considered a fraud upon the medical profession to practice upon the eclectic system and to profess to practice upon the allopathic system. To this evidence the defendant objected generally, but the court admitted it. Here again we have a general objection to testimony as a whole which was in part admissible, and therefore properly admitted. Moreover, this is the motion of the defendant, and does not show that the witness was not speaking of the county medical society and its rules in relation to the conduct of its members, and was speaking of medical practice generally. And it may be added that if that remark of the witness was improperly admitted, it is not easy to see how it could have affected the verdict.

3. The defendant objected to the admission in evidence of the advertisement in the " Herald," but it was clearly admissible. It tended to prove the allegations of the declaration in relation to the representations made as to the character and value of the plaintiff's practice.

4. The plaintiff offered in evidence the testimony of Charles Sanford, assistant assessor of internal revenue, that the tax list of the defendant's income as sworn to by the defendant for the year. 1864, after deducting $600 and other legal deductions, showed a taxable income of $317. This testimony was clearly admissible. Looking to the requirements of the law in relation to a return of income, it was a very strong admission that he did not receive $6000 for his practice the preceding year.

5. The defendant offered to prove by E. A. Brown, M. D., formerly of the eclectic school in Danbury, but who had given up his practice before the defendant commenced practice in that place; that while the witness and the defendant were riding together at various times in Danbury during the defendant's practice there, and while visiting former patients of the witness, the defendant attacked the system called eclectic

Bradbury v. Bardin.

and defended the regular system, or allopathic, as being declarations against the defendant's interest at the time, and verbal acts forming part of the practice of the defendant, which evidence was objected to and not allowed.

That evidence was properly excluded. It was not evidence of what the defendant did, or prescribed, or of what he said while in the sick room prescribing or consulting or doing any act as a practitioner, to qualify and explain the act, but a mere expression of opinion in an independent conversation, and for aught that appears on the highway. That the declarations were against the defendant's interest at the time has not been urged in the argument and is not manifest.

6. The defendant objected, in the sixth place, to evidence offered by the plaintiff to prove various specific acts of irregular and illegitimate practice as an abortionist ; but it was clearly admissible. The plaintiff was induced to suppose that he was purchasing a position which afforded a legitimate practice of $6,000 a year. The money was the measure of the extent of the practice. If part of it was derived from illegitimate or irregular and illegal practice, the representation was untrue and the plaintiff defrauded. Proof that particular and specific parts of his practice, from which he presumptively derived a part of his income, were irregular, illegitimate and illegal, and were such as the plaintiff could not honestly and conscientiously continue in order to realize the same amount, were clearly admissible.

7. We discover no error in the charge of the judge. The requests of the plaintiff involved the same principles upon which the several objections to the testimony which we have considered were placed, and the court very properly declined to charge in conformity to them. On the other hand, the charge of the court upon the several questions and issues legitimately raised in the case was in our opinion perfectly proper and unexceptionable.

A new trial is not advised.

In this opinion the other judges concurred.