## STATE OF CONNECTICUT *v.* NEWMAN J. MASSE

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 16-2640

Argued June 1—decided September 11, 1962

*Bernard E. Francis,* of Elmwood, for the appellant (defendant).

*Henry J. Goldberg,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant was found guilty, after trial to a jury, of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227 of the General Statutes. In his appeal the defendant did not request a finding, nor was a finding necessary. The appeal is confined to certain questioned rulings on motions and evidence. The defendant has assigned error in the action of the court (1) in granting the state's motion for a mistrial and discharge of the jury because one of the witnesses for the prosecution was unavailable owing to physical injury; (2) in making the defendant plead not guilty twice to the same offense (double jeopardy); (3) in admitting in evidence a medical report of a deceased physician as a business entry of the Farmington police department; (4) in ordering defendant's counsel, while cross-examining a witness for the state, to make a full exhibit of notes from which the witness had been testifying, when the defense attorney had offered to make these notes an exhibit for identification only, and in refusing to allow the defense attorney to continue cross-examining the witness about the notes unless they were entered as a full exhibit.

The nature of this appeal makes unnecessary an examination of the transcript of evidence which has been filed, except as it may be needed for the purpose of establishing the facts bearing upon the claimed errors.

On January 18, 1962, the defendant pleaded not guilty, a jury was selected, the oath administered, and the information read to the jury by the clerk. The jury was then excused by the presiding judge until January 23, 1962, the next day of the session assigned for jury trials. It was stipulated by counsel that, because of the five-day interval, if the presiding judge, the assistant prosecuting attorney or the defense counsel could not then be present, others could be substituted for them, and that if any members of the jury of twelve were absent, the case would proceed so long as a minimum of six jurors were present. On January 23 (Tuesday), the defendant appeared ready for trial. The prosecution informed the court that a police sergeant, a vital witness for the state, was presently unavailable because of a physical injury received the preceding Sunday. For this reason the state moved for a discharge of the jury and for a continuance of the matter to January 30. The court was informed that the witness would not be available for at least one week.

This motion, which in effect was one for mistrial, was opposed by the defendant on the following grounds: The case had been marked ready for trial notwithstanding the happening of certain contingencies which were stipulated; there was no basis for a mistrial; no other case could take precedence until the defendant's case was finally disposed of; adjournment of the case for one week would be unreasonable; the defendant was entitled to be tried by the jury already selected; the defendant was entitled to a speedy trial; and if a mistrial were directed, any further proceedings against the defendant would constitute double jeopardy. The court declared a mistrial and discharged the jury.

On January 30, the defendant was again put to plea upon the same information. He declined to stand on the plea already entered and, upon being

arraigned anew, pleaded not guilty and elected to be tried by a jury of twelve. A new jury was selected and the defendant tried. In the course of the trial the defendant objected to certain rulings of the court which were assigned as error under claims (3) and (4) noted above.

In granting or denying a motion for a mistrial, the court is vested with a wide discretion, and its action will not be disturbed unless the discretion was clearly abused. *Ferino* v. *Palmer,* 133 Conn. 463, 466. It is generally recognized that the jury may be discharged after they have been impaneled and sworn—but before testimony is introduced—if there is reasonable cause for such action; and this may be done without defendant's consent. 15 Am. Jur. 75, § 406. The reasons assignable for such action are as numerous as the exigencies and hazards that are imminent in all human activity, and a recital of the various occurrences which have been held to constitute cause for mistrial would serve no enlightening purpose. Many of such cases have been set out in *State* v. *Allen,* 46 Conn. 531, 543, and *State* v. *Lee,* 65 Conn. 265, 273. An early review of the law on this question is contained in *State* v. *Woodruff,* 2 Day 504, wherein the decision of Judge Kent in *People* v. *Olcott,* 2 Johns. Cas. 301 (N.Y.), appears (p. 507) in a footnote. Judge Kent cited precedent (p. 512) that "the question was not capable of being determined by any general rule, for that none could govern the discretion of the court in all possible cases and circumstances."

The underlying principle by which courts are authorized and empowered to discharge juries from further consideration of a case, without infringing on the rights of an accused, had early been stated by Mr. Justice Story in *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 580, and it appears to be as valid today as it was in 1824: "We think, that in all

cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject, in the American Courts; but, after weighing the question with due deliberation, we are of opinion, that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial." See note at 6 L. Ed. 165; 2 Rose, Notes on United States Reports (Rev. Ed. 1917) p. 94.

In the case before us, the defendant had no right to have the trial go forward when it became known that the absence of a material witness might defeat the state's case. This circumstance was not due to any failure, neglect, or lack of preparation on the part of the prosecution. Due process of law does not mean that the rights of the public must be disregarded by pursuing a course manifestly unjust and fatuous. The court was faced with the choice of discharging the jury or continuing the case. If it had granted a continuance, as suggested by the

defendant, its action would have been correct. *State* v. *Chin Lung,* 106 Conn. 701, 722. It was not bound to do so, however, if in its discretion declaring a mistrial was the proper decision to make. This action of the court is beyond criticism and appears to us to have been practical and wise. It thereby released for duty in other pending cases a significant number of veniremen who would otherwise have been immobilized from service for an indefinite period. This assignment of error avails the defendant nothing.

The defendant also claims error in that the trial in this case exposed him to double jeopardy. What we have said above makes unnecessary any extensive consideration of this claim. The rule in our state as to what constitutes double jeopardy is stated in the leading case of *State* v. *Lee,* 65 Conn. 265, 273: "And so the putting in jeopardy means a jeopardy which is real and has continued through every stage of one prosecution, as fixed by existing laws relating to procedure; while such prosecution remains undetermined the one jeopardy has not been exhausted. The jeopardy is not exhausted by an indictment followed by a *nolle,* nor in this State by a *nolle* after the trial has commenced when the prisoner does not claim a verdict, . . . nor by the discharge of a jury . . ." (citing many cases where juries had been discharged for various reasons). See also *State* v. *Donnelly,* 124 Conn. 661, 663; *State* v. *Palko,* 122 Conn. 529, 539; *State* v. *Muolo,* 118 Conn. 373, 381; *State* v. *Garvey,* 42 Conn. 232, 233; *State* v. *Benham,* 7 Conn. 414, 418. The trial of the accused was not a new case but a continuation of the same original cause. There was only one prosecution, and but one placing of the defendant in jeopardy. No further arraignment was required, since the original plea of not guilty stood until the case was disposed of by judgment. The action of the defendant in ob-

jecting to a trial on the original plea and in voluntarily submitting to a repetition of the arraignment does not alter the nature of the proceedings or their effect. The ruling of the court was correct.

In the course of the trial, Sergeant Caleskie of the Farmington police department was presented as a witness for the state. He testified as to his own personal observations of the condition of the accused at the time of the arrest and also as to the results of an examination of the accused at the police department. This testimony was based upon a report made by the witness at the time of the examination. In this report and in his testimony, the sergeant concluded that at the time of the arrest and the examination the accused was under the influence of alcohol and unfit to operate a motor vehicle.

The sergeant was next questioned concerning the practice of the department with regard to medical examinations of persons accused of operating under the influence of intoxicating liquor. In accordance with this practice, he testified, an officer of the department, together with the accused, was sent to Doctor Crawley in West Hartford. The physician then conducted an examination of the accused and filled out, in duplicate, a form prepared by the police department. This form consisted of a mimeographed sheet with the heading "Farmington Police Department" and contained a large number of questions calling for either short written answers or the encircling of certain items printed thereon. Thus, for example, there were legends and encircled words as quoted: "Breath: strong; Color of face: pale; Mental state: polite; Eyes: watery, bloodshot; Pupils: dilated; Balance: wabbling; Walk: stumbling; Turning: uncertain; Finger to nose test: uncertain; Choice of words: jerky." At the end, and in a place reserved for signature, appeared the following: "George A. Crawley M.D., 12-24-61, 4:47 AM," and

below that, on a line after the printed words "Physician's Diagnosis," was the following handwritten statement: "Under the inf of alcohol and unfit to drive." Below this appeared the signature of the officer.

This paper was offered in evidence and admitted, over defendant's objection, as a business entry of the police department. It was testified that the examining physician had filled out the paper and signed it and it was then returned to the police department by the attending officer. The principal objection of the defandant was that the statement, admitted and marked exhibit A, did not qualify as a business entry under § 52-180 of the General Statutes.[1] Our attention has been called to no criminal case in this state or elsewhere involving the precise question here presented, namely, whether a physician's report made to the police under the circumstances disclosed may properly be used in evidence as a business record of the police department, thus dispensing with the testimony of the physician who made the report. In the present case, Dr. Crawley had died before the trial.

---

[1] "Sec. 52-180.   ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTO-GRAPHIC COPIES.   Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of such business to make such writing or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.   Such writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses.   Either of such facts and all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of such evidence, but not to affect its admissibility. . . .   The term 'business' shall include business, profession, occupation and calling of every kind."

Section 52-180 concerns the admissibility of business entries in both criminal and civil actions and represents a culmination of a long-sustained and successful effort to modernize an ancient and obsolete rule concerning the admission of such evidence and to broaden its scope. It is a statutory recognition of the prevailing improvements over archaic methods in record keeping and removes awkward and outmoded impediments on the introduction of records presumably accurate and trustworthy. See *D'Amato* v. *Johnston,* 140 Conn. 54, 56-63; *State* v. *Hayes,* 127 Conn. 543, 598; *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 98-103; *Johnson* v. *Lutz,* 253 N.Y. 124, 126-129. In our state, this rule of evidence, constituting an exception to the common-law rule against hearsay, found its origin in the action for book debt.[2] *Terrill* v. *Beecher,* 9 Conn. 344, 348. Its early use was severely restricted, and the only resemblance which it had to the present rule is that it dispensed with the testimony of the party making a book entry to qualify the entry for admission in evidence. It also became unnecessary first to show that the person making the entry was dead, incompetent, or otherwise unavailable. *Smith* v. *Law,* 47 Conn. 431; *Butler* v. *Cornwall Iron Co.,* 22 Conn. 335, 360; *Livingston* v. *Tyler,* 14 Conn. 493.

Under our present rule, a variety of records, books, and papers have been allowed in evidence, as for example, books of account, hospital records, factory memoranda, factory medical records, nursing records, welfare investigator's data, and police reports. *State* v. *Hayes,* supra; *Borucki* v. *MacKenzie Bros. Co.,* supra; *D'Amato* v. *Johnston,*

[2] The predecessor of § 52-180, passed in 1931 (Cum. Sup. 1935, § 1675c; Rev. 1949, § 7903), replaced sections on the remedy of book debt and the rule of evidence which had been linked together in a separate chapter of the statutes. Rev. 1875, p. 471; Rev. 1888, §§ 1040, 1041; Rev. 1902, §§ 980, 981; Rev. 1918, §§ 6016, 6017; Rev. 1930, §§ 5877, 5878.

supra; *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714; *Manfredi* v. *United Aircraft Corporation,* 138 Conn. 23; *McCarthy* v. *Maxon,* 134 Conn. 170; *State* v. *Ferraiuolo,* 145 Conn. 458; *Sheary* v. *Hallock's of Middletown, Inc.,* 149 Conn. 188. The statute is to be liberally construed, with a view to the accomplishment of the worthy purpose for which it was enacted. There are limits, however, beyond which it was not intended to go, and these have been defined clearly and exactly.

For a record to be admissible under the statute, it is required to meet three qualifications: (1) It must be made in the regular course of business. (2) It must be the regular course of business to make such record. (3) It must be made at or near the time of the act, transaction or event. *Szela* v. *Johnson Motor Lines, Inc.,* supra, 723. "[T]he mere fact that a record is generally admissible under . . . [the statute] does not mean that anything and everything contained in the record is necessarily admissible in a given case." *Maggi* v. *Mendillo,* 147 Conn. 663, 667. In a civil suit involving an expression of opinion in a hospital record concerning the state of intoxication of the person treated, such entry is admissible when setting forth a diagnosis of a patient's illness. *D'Amato* v. *Johnston,* supra, 58; *Borucki* v. *MacKenzie Bros. Co.,* supra, 102. To be admissible, the record must be one based on the entrant's own observation or upon information of others whose duty it is to transmit it to him, all of whom must be members of the organization whose record it is. *D'Amato* v. *Johnston,* supra, 60. Thus, where a portion of a hospital record incorporated in the attending physician's report was offered through the physician, it was held not admissible as a record of the hospital. *Orzechowski* v. *Higgins,* 146 Conn. 463, 466. And it has been held that a report made by a roentgenologist to a refer-

ring physician, pursuant to the usual course of dealing between them, as to what in his opinion was disclosed by x-ray pictures, offered through the physician, was not admissible, under a statute like ours, either as a memorandum made in the regular course of business or as a verbal act or part of the res gestae or a hospital or nursing record. *Baltimore & O.R. Co.* v. *Zapf,* 192 Md. 403, 411. But where such report was part of the hospital record it was admitted with such record. *Whipple* v. *Grandchamp,* 261 Mass. 40; see note, 6 A.L.R.2d 406.

Police reports may be introduced in evidence under our statute provided they meet the tests specified. Statements of volunteers and of those outside of the police department, who are under no duty to make observations or record them as members of the police organization, although made part of the police records or reports, are treated as hearsay and do not come under the exception provided by the statute. That is particularly true of reports containing statements of witnesses as to their own observation, opinions or speculations. *Sheary* v. *Hallock's of Middletown, Inc.,* 149 Conn. 188, 194; see note, 144 A.L.R. 727, 729.

There is no evidence that Dr. Crawley was a member of the Farmington police department or under any duty to the department to make the report which was admitted in evidence. The fact that his observations and opinions were expressed on a mimeographed form of the police department does not make it a record of that department. It was no more and no less than a statement of the physician's own observations and opinions, made in the course of his own medical practice. It was not offered as a record made by Doctor Crawley and, if it had been, there is no evidence under which it would have qualified as such under § 52-180 or any other pertinent exception to the hearsay rule. The admission

of the exhibit was erroneous, and although there was other substantial testimony as to the defendant's condition of intoxication, the exhibit was the only evidence offered in the nature of an expert medical opinion. *State* v. *Jones,* 124 Conn. 664, 668. Its effect on the jury must be regarded as prejudicial, and the error was harmful and reversible.

We consider briefly the final error assigned, since it is likely that the same questions may arise upon a new trial. During the cross-examination of a police sergeant, defense counsel took from the witness a memorandum evidently made by him and from which he had testified. He then proceeded to question the witness concerning items obviously contained in or suggested by the memorandum. Such procedure was improper and not within the allowable scope of a cross-examination. Authorities on this point are so abundant and uniform that the cardinal rules involved may be stated without elaborate citation.

A witness may use a memorandum to refresh his recollection if it appears that such aid is indicated; his testimony, however, is that of his present recollection of a past matter and not of something of which he has no present knowledge except as derived by a reading of the memorandum. A memorandum used for the purpose of refreshing recollection may be one made by the witness or another. In itself it is not evidence. Opposing counsel may examine such a memorandum to make sure that it is what it purports to be and that a surreptitious use of a document is not being attempted. If use of the memorandum is questioned because, for example, it appears that the witness is reading from it and not testifying from a refreshed recollection, or because he is supplying from it facts which are not susceptible of being remembered without reliance on a record for exactness, or for other reasons of

misuse of the memorandum for the limited purpose claimed, then an objection may be raised and the issue presented for decision by the court as a matter of law, in the absence of the jury. It is not permissible to test the propriety of using a memorandum for the sole purpose of refreshing a present recollection by cross-examining the witness before the jury on facts contained or purported to be contained in such memorandum, for the jury then would have no knowledge as to the correctness or incorrectness of such reference, or they might be misled into assuming that the fact implied in the question could be considered as evidence and used to measure the truth or accuracy of the testimony of the witness.

Where a witness has no present recollection of a past matter and his reliance is entirely upon a memorandum from which he knows upon inspection that at some former time he had knowledge of the facts stated therein and that the statement is true, such memorandum may be admitted as a record of a past recollection. *Neff* v. *Neff,* 96 Conn. 273. In qualifying the memorandum as an exhibit, cross-examination of the witness is permitted to determine the existence or state of his present recollection, the circumstances surrounding the origin or authenticity of the proffered document, and the conditions and requirements relating to its admissibility. No cross-examination of the witness on the contents of the memorandum is ordinarily permissible, for if the witness had a present recollection of the contents the memorandum would not have been admitted.

In the present case, it appears that the memorandum may have been a business entry and that the witness had been reading from it. That had not been objected to. Proper procedure requires that such a record be introduced to prove its contents rather than to have the witness read from it. *State* v. *Ferraiuolo,* 145 Conn. 458, 464; *Manfredi* v.

*United Aircraft Corporation,* 138 Conn. 23, 25. It may then be used for purposes of cross-examination.

It is not proper to conduct an interrogation before the jury on any document not in evidence or that will be withheld from the jury's inspection. *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 115; see *Voyles* v. *Columbia Terminals Co.,* 223 S.W.2d 870 (Mo.); 3 Wigmore, Evidence (3d Ed.) §§ 725-765 & Sup. Nor is it proper for counsel to abstract from a witness a memorandum used by him for an allowable purpose and, with such document displayed to the jury, create the impression that the credibility of the witness is being tested by the suggested contents of the document. Such tactics savor more of the theater than the courtroom.

Exhibits should not be marked for identification unless it is intended to offer them in evidence upon completing their qualification or unless they are so marked to protect the rights of the offeror in further proceedings. Absent such intention, the marking for identification tends to dignify the objects as exhibits in the eyes of the jury and should be avoided. *State* v. *Schleifer,* 102 Conn. 708, 722.

This assignment of error is without merit.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion DEARINGTON and KINMONTH, Js., concurred.