STATE OF CONNECTICUT *v.* DONALD L. PALOZIE

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 8—decided July 11, 1973

*Lawrence C. Klaczak,* public defender, for the appellant (defendant).

*Abbot B. Schwebel,* assistant state's attorney, for the appellee (state).

LOISELLE, J.   The defendant, Donald L. Palozie, was convicted by a jury of three counts of risk of injury to a child in violation of General Statutes § 53-21, two counts of cruelty to persons in violation of § 53-20, and one count of breach of the peace in violation of § 53-174. The charges were made in three informations considered by the jury.   The defendant's motion to set aside the verdict was denied and from the judgment rendered thereon he has appealed.

The assignments of error briefed by the defendant relate to four rulings on evidence and to the court's refusal to set aside the verdict as against the weight of the evidence and contrary to law.

The assignments of error relating to the court's refusal to set aside the verdict are tested by the evidence printed in the appendices to the briefs, which reveal the following facts: On February 13, 1970, the defendant's ten-year-old son, Donald Palozie, Jr., hereinafter called Donald, was brought to the school nurse by his teacher after she noticed he had trouble walking and sitting. On that day the nurse saw bruises covering an area of about three-by-four inches on Donald's left buttock which was red and covered with some scabbing and below that a two-by-three-inch area that was black and blue. On February 18, 1970, a bruise on Donald's left buttock about three inches long and one inch wide was photographed and the photograph was later introduced into evidence. The defendant admitted he strapped his son three or four times on February 12, 1970. On February 28, 1970, the defendant was arrested and charged with the crimes of risk of injury to a child in violation of § 53-21 and cruelty to persons in violation of § 53-20, arising out of the incident of February 12, 1970. The jury found him guilty on the first count.

A day or two after his arrest the defendant, at about 1:30 a.m., threw his son Donald against a chair, bruising his head, and stepped on his back because he had "squealed" to the school principal and a policeman. Donald's teacher, his grandmother, a state trooper, and a school nurse all observed the bruise on his forehead, which was described as large and egg-shaped. On March 9, 1970, Donald was examined in Enfield by a doctor who noted bruises on Donald's forehead and left temple. Donald told the doctor that the bruises were a result of being thrown to the floor by his father and having his head

hit against the floor several times. Donald said that he vomited after this incident. The defendant admitted slapping Donald on March 1, 1970. As a result of the incident of March 1, 1970, a second information was filed in three counts; one for the crime of risk of injury to a child in violation of § 53-21, the second for cruelty to persons in violation of § 53-20 and the third for breach of the peace in violation of § 53-174. The jury found him guilty on all counts.

On March 5, 1970, a case worker for the state welfare department placed Donald in the custody of his aunt. On April 15, 1970, the defendant went to his parents' home in Ellington where Donald and his aunt were visiting. The defendant slapped his son and made him cry and later the same day hit his son in the nose, telling him that he was being slapped because he "squealed" to his school principal. The defendant admitted he slapped his son on that day. A third information was filed relative to the events of April 15, 1970, in three counts charging offenses similar to those in the second information. The breach of the peace count was nolled and the jury found the defendant guilty of the two remaining counts.

The defendant claims that on the facts presented the verdict was contrary to law in that the evidence offered was insufficient to prove any of the three separate crimes charged in the three informations. More specifically, the defendant asserts that since no evidence was offered to prove that Donald's health was impaired, an essential element of the crime of risk of injury to a child was lacking. Sec-

tion 53-21 of the General Statutes[1] does not require a showing that, in fact, the health of the child was impaired but only that the conduct or the acts of the defendant were such that the health of the child was likely to be impaired. Strapping a child to a degree that bruises with some scabbing covering an area of three or four inches result and further causing a two-to-three-inch area to become black and blue is conduct on which a jury could appropriately base a conclusion that the health of the child was likely to be impaired and there was sufficient evidence to convict the defendant of the charge in the first information. Similarly, throwing a child against a chair, bruising his head, and then stepping on his back, which caused vomiting that night and the next day, is conduct which clearly falls within the definition of risk of injury to a child and is sufficient to establish guilt under the second information. Finally, the defendant's action in slapping his son and then "poking" his son in the nose is sufficient to establish culpability in the third information. Although the record discloses more by way of proof, further comment to support the jury's verdict that the defendant's actions would likely impair the health of a child in each of the three informations is hardly necessary.

The defendant also claims that corporal punishment administered by the defendant to his son was

---

[1] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

for disciplinary purposes and was not criminal conduct within the charge of cruelty to persons. Relative to this claim, the second and third informations charged that the defendant "did unlawfully punish a child under the age of sixteen years, in violation of Section 53-20 of the General Statutes."[2] The word "unlawfully" does not connote "inhuman or barbarous treatment" as claimed by the defendant. Reading the statute in its entirety, and in light of its history and purpose, the word "unlawfully" should be construed within the rule of statutory construction that a general word, following a particular enumeration, is intended to apply only to matters of the same general character. *Griffin* v. *Fancher*, 127 Conn. 686, 690, 20 A.2d 95; *Connecticut Mutual Life Ins. Co.* v. *Rogers*, 113 Conn. 14, 21–22, 154 A. 246; *Brown* v. *Congdon*, 50 Conn. 302, 309. Since the statute also condemns the maltreatment or overworking of children under sixteen years of age, the words "unlawfully punishes" must be read to apply to punishment of similar general character. The jury could well find that the defendant's action toward his son as previously recited was "unlawful" punishment as charged in the second and third informations.

The defendant's argument that the evidence did not support a verdict of guilty of breach of the peace

[2] "[General Statutes] Sec. 53-20. CRUELTY TO PERSONS. Any person who tortures, torments, cruelly or unlawfully punishes or wilfully or negligently deprives any person of necessary food, clothing, shelter or proper physical care; and any person who, having the control and custody of any child under the age of sixteen years, in any capacity whatsoever, maltreats, tortures, overworks, cruelly or unlawfully punishes or wilfully or negligently deprives such child of necessary food, clothing, or shelter shall be fined not more than five hundred dollars or imprisoned not more than one year or both."

in violation of § 53-174[3] in the third information needs no discussion. A slap in the face and a "poke" in the nose are assaults as contemplated in the statutes.

During the course of the trial, the court admitted in evidence a report prepared by the state welfare department to support the petition to remove the defendant as guardian of his two sons. The report was admitted as a business entry within the provisions of § 52-180. The evidence clearly establishes that the report was admissible as a business entry as it was made in the ordinary course of business; it was the ordinary course of business to make the report; it was made at the time of the occurrence or within a reasonable time thereafter. *State* v. *Vennard*, 159 Conn. 385, 397, 270 A.2d 837; *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 723, 146 A.2d 910; *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 60, 192 A. 317. The fact that the report was a welfare department report or investigation did not affect its admissibility under the statute. *State* v. *Ferraiuolo*, 145 Conn. 458, 464, 144 A.2d 41. The defendant does not contest the admissibility of the report on these grounds but has briefed his objection on the ground that the record was not the

[3] "[General Statutes] Sec. 53-174. BREACH OF THE PEACE. INTIMIDATION. LIBEL. Any person who disturbs or breaks the peace by tumultuous and offensive carriage, noise or behavior, or by threatening, traducing, quarreling with, challenging, *assaulting or striking another* [emphasis added], or disturbs or breaks the peace, or provokes contention, by following or mocking any person, with abusive or indecent language, gestures or noise, or, with intent to frighten any person, threatens to commit any crime against him or his property or writes or prints and publicly exhibits or distributes, or publicly exhibits, posts up or advertises, any offensive, indecent or abusive matter concerning any person, shall be fined not more than five hundred dollars or imprisoned not more than one year or both." (Repealed effective October 1, 1971.)

entrant's own observation nor was it information transmitted to the entrant by someone whose duty it was to transmit the information. See *D'Amato* v. *Johnston,* 140 Conn. 54, 59, 97 A.2d 893.

The report includes observations by the entrant; verbal statements by two teachers who reported what the defendant's sons had told them and included their own observations; an admission by the defendant; and statements made by one of the defendant's sons. The entrant's own observations are clearly admissible. *Sheary* v. *Hallock's of Middletown, Inc.,* 149 Conn. 188, 195, 177 A.2d 680; *D'Amato* v. *Johnston,* supra.

Statements made by the teachers were statements by persons whose duty it was to transmit information to the welfare department. General Statutes § 17-38a. The statute not only requires the report by the teachers but also requires that "[s]uch report shall contain . . . any other information which the reporter believes might be helpful in establishing the cause of the injury or injuries and the identity of the perpetrator thereof." The observations of the teachers as recorded in the reports were admissible within the provisions of § 52-180.

The admission of the defendant made to the entrant was also within the provisions of § 52-180. Since the defendant's statement was in the nature of an admission and came within the exception to the hearsay rule, the entrant's report concerning the admission would be admissible to prove the truth of the statement despite the fact that the defendant had no business duty to make the statement. *Kelly* v. *Sheehan,* 158 Conn. 281, 285–86, 259 A.2d 605; McCormick, Evidence (2d Ed.) § 310, p. 726.

The only portion of the report which is inadmissible under the statute is that which relates to the statements made by one of the defendant's sons. It is unquestioned that they had no duty to report to the entrant. At the time the report was offered as an exhibit there were long statements made by counsel for the defendant and counsel for the codefendant. A general objection to the entire report was made. At one point the defendant's counsel recognized the rule that if part of the report was admissible he had a duty to object to any part which was inadmissible and quoted this principle to the court, citing "that Mucci Case," which no doubt referred to *Mucci* v. *LeMonte,* 157 Conn. 566, 570, 254 A.2d 879. After this statement and after further comment by cocounsel, counsel for the defendant stated: "I don't feel it is necessary to go through the statement item by item. There isn't anything in it that is admissible so I just object." Under these circumstances, if any portion of the report is admissible, such a general objection would not be sufficient. It was incumbent on the defendant to point out the inadmissible parts with specificity and to give reasons why the specified parts were not admissible. The court was not in error in admitting the welfare department report. It was not the court's duty to separate the inadmissible parts of the report from the admissible parts. *Mucci* v. *LeMonte,* supra, 571; *Lewis* v. *Havens,* 40 Conn. 363, 369; *Bradbury* v. *Bardin,* 35 Conn. 577, 582; McCormick, op. cit. § 52, p. 117.

The defendant assigns error in three other rulings on evidence. During the course of the trial the court refused to permit the defendant to ask a question on cross-examination of Mrs. Lynette K. Feldman, a

supervisor of protective services at the state child welfare department. Specifically, Mrs. Feldman, when asked whether the welfare department report admitted in evidence included "[i]nterviews or statements of people who the case worker interviewed which would tend to support the parents' position" answered in the negative and indicated in response to a follow-up question that statements favorable to the parents would be left out.

At this point the defendant's counsel asked a detailed question and concluded "it [the report] is, in fact, not impartial, is it?" An objection by the state was interposed and the court ruled that the question called for a conclusion and sustained the objection. The defendant assigns error in this ruling and claims that his right to cross-examine the witness was erroneously restricted.

A trial court has wide discretion as to the scope of cross-examination. *State* v. *Brathwaite,* 164 Conn. 617, 325 A.2d 284; *Fahey* v. *Clark,* 125 Conn. 44, 3 A.2d 313. The general rule remains that witnesses must state facts and not their individual conclusions. *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776; *Sydleman* v. *Beckwith,* 43 Conn. 9, 11. Interrogation of the witness as to the "impartiality" of the document does not fit within any recognized exception to the rule. In light of the witness' earlier testimony regarding the departmental practice of excluding statements favorable to the parents, the jury had before it facts from which they could draw conclusions as to the impartiality of the documents and the weight to be given to the evidence. It was, therefore, within the discretion of the trial court properly to exclude the conclusions

of the witness. *Robinson* v. *Faulkner,* 163 Conn. 365, 371, 306 A.2d 857; *Atwood* v. *Atwood,* 84 Conn. 169, 174, 79 A. 59.

The defendant also claims that the court erred in permitting the state to question the defendant concerning whether the defendant used a "strap" on his children in May, 1969. An objection was interposed by the defendant who claimed that the question related to other prior incidents not within the information. While the question was addressed to incidents not detailed in the information, it was nevertheless relevant on the issue of the credibility of the defendant. The defendant had testified that he did not use a strap on many occasions. An accused in taking the stand subjects himself to the same rules and is called on to submit to the same tests which could by law be applied to other witnesses. *State* v. *Moynahan,* 164 Conn. 560, 599, 325 A.2d 199; *State* v. *Griswold,* 67 Conn. 290, 307, 34 A. 1046. The trial court in the exercise of its wide discretion as to the scope of cross-examination did not err in permitting inquiry into this conduct occurring prior to the alleged criminal activity. Furthermore, it is apparent from the finding that after the witness answered "yes" to the question and related that he had strapped three children, the questioning on this issue ceased. The introduction of this evidence was not inflammatory nor did its prejudicial impact outweigh its probative value on the issue of the defendant's credibility.

The defendant's final claim addressed to rulings on evidence relates to the state's examination of the defendant's mother-in-law, Mrs. Irene Evans. She was called by the state as a rebuttal witness and was asked: "Do you know whether or not Nancy

[the defendant's wife] is afraid of her husband?" An objection was raised by the defendant's counsel who stated that the question "calls for a conclusion, an opinion, and I don't know what relevancy it has either." This court in reviewing claims of error will consider those grounds asserted by counsel at the time of the objection. *Casalo* v. *Claro,* 147 Conn. 625, 165 A.2d 153. Since the attack made by the defendant related only to the relevancy of the question, and the opinion nature of the evidence sought, this court will restrict review to these two specific claims. The witness could properly offer an opinion as to whether the defendant's wife was afraid of the defendant. Since the witness knew both the defendant and his wife and since fear is an emotion which can be observed through circumstances so numerous and complicated that only an opinion or impression may reasonably describe it, the court in the exercise of its discretion could properly allow such testimony. See *Atwood* v. *Atwood,* supra.

Turning to the issue of the relevance of the question posed to Mrs. Evans, it is well settled that "[n]o precise and universal test of relevancy is furnished by the law, and questions must be determined in each case according to the teaching of reason and judicial experience." *Robinson* v. *Faulkner,* supra, 371; *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 425, 270 A.2d 546. A trial court has wide discretion in its rulings on relevancy of evidence; *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473; and the admission of evidence in rebuttal is ordinarily within the court's discretion. *Reboni* v. *Case Bros., Inc.,* 137 Conn. 501, 508, 78 A.2d 887. The state offered Mrs. Evans' testimony in rebuttal to Mrs. Palozie's testimony that she was not afraid of her husband. As the question was addressed to earlier testimony

and because the defendant Palozie's temper was an issue in the case, the question asked Mrs. Evans could reasonably be regarded as relevant. Since no other objection was raised the trial court did not abuse its discretion in permitting this question.

There is no error.

In this opinion the other judges concurred.